**STATE ex rel. WASHINGTON UNIVERSITY MEDICAL CENTER REDEVELOPMENT CORP., Relator,**

v.

**Honorable Carl R. GAERTNER, Judge, 22nd Judicial Circuit, City of St. Louis, Missouri, Respondent.**

No. 62733.

Supreme Court of Missouri,
En Banc.

Jan. 12, 1982.
Rehearing Denied Feb. 9, 1982.

■■■■■■■■■

Robert G. Brady and Gerald T. Carmody, St. Louis, for relator.

Samuel C. Ebling, St. Louis, for respondent.

Irvin Dagen and Gregory R. Smith, St. Louis, amicus curiae.

WELLIVER, Judge.

This is a proceeding in prohibition. Relator Washington University Medical Center Redevelopment Corporation, a corporation organized and existing under the Urban Redevelopment Corporation Law, Chapter 353, RSMo 1978,[1] seeks condemnation of a tract of land in St. Louis owned by Dimitrios James (hereafter "landowner"). Landowner filed a counterclaim alleging, among other things, loss of rental between the date of the declaration of the area as a blighted area and the time of the actual taking of the property. Relator seeks to prohibit respondent judge from proceeding further until the counterclaim has been dismissed. Relator's first request for relief was to the Missouri Court of Appeals, Eastern District, which issued its preliminary writ and later made the writ permanent by a divided opinion. We ordered the case transferred because we viewed the question of whether a condemnee may file a counterclaim in a condemnation proceeding to be a question of general interest and importance. *See* Rule 83.03.[2] We conclude that under current Missouri statutes and rules of civil procedure, no counterclaim may be brought by a condemnee in a condemnation proceeding, and we therefore order the preliminary writ made permanent.

Portions of the opinion of Crist, J., and of the dissenting opinion of Smith, J., have been adopted and used herein without quotation marks.

On June 13, 1974, the Board of Aldermen of the City of St. Louis declared the area in which landowner's land was located to be "blighted". Approximately four months later, relator submitted a redevelopment plan regarding this area to the board of aldermen, who approved the plan on February 28, 1975, and granted relator the authority to acquire the property in this area by eminent domain. Thereafter, relator began negotiating with various property owners in the blighted area for purchase of their property.

On April 12, 1977, nearly three years after designation of the area as *blighted* relator instituted its suit to condemn landowner's property. Judge Geary entered an order of condemnation on landowner's property and, pursuant to § 523.040 and Rule 86.06, (1977), appointed three commissioners to appraise the value of that property. They appraised it at $45,000. Relator excepted to this appraisal, elected not to pay the $45,000 into the court registry, requested a jury to assess the amount of damages sustained by landowner, and filed notice of lis pendens. *See* §§ 523.050–.060; Rule 86.-08.

Landowner filed a counterclaim wherein he alleged that the submission and processing of relator's redevelopment plan, together with the attendant publicity, made it common knowledge that his property would be appropriated by relator in connection with its plan. Landowner further alleged that when relator subsequently contacted the owners and tenants of the various properties in the *blighted* area, it: (1) caused the occupants, including landowner's tenants, to relocate; (2) discouraged market activity in the area; (3) encouraged vandalism (thereby diminishing property values); and (4) left the landowner's property and the surrounding neighborhood physically and environmentally uninhabitable thereby

---

1. All references to Missouri statutes are to RSMo 1978, unless otherwise indicated.

2. All references to Missouri Rules of Civil Procedure are to those effective in 1981, unless otherwise indicated. Rules 86.01–86.10 have remained unchanged since the condemnation proceeding was initiated in April 1977.

making it impossible for landowner to rent his property. As a result of this "cloud of condemnation" which has been hanging over his head, landowner asserted he has been deprived of his right to have full use and enjoyment of his property and as a result has suffered "an unlawful taking and damaging of his property in violation of Article I, § 26 of the Constitution of Missouri and the Fifth and Fourteenth Amendments of the United States Constitution." He prayed for damages equal to the reasonable rental value of his property for the period between the date relator submitted its redevelopment plan and the date of the condemnation trial.

Relator moved to dismiss landowner's counterclaim on three different grounds, one of which was that a counterclaim cannot be maintained in a condemnation proceeding. Respondent denied this motion. Relator then petitioned for a writ of prohibition based upon the theory that no counterclaim may be brought by a condemnee in a condemnation action. Relator argued to the court of appeals, as it does to this Court, that § 523.060 and Rule 86.06 establish that a trial in a condemnation case is limited to consideration of the exceptions filed by either party to the appraisal made by the commissioners of damages incurred by the condemnee due to the taking of his property, and that since the damages alleged in landowner's counterclaim necessarily arose prior to the legal date of the taking of his property, they are not cognizable in a condemnation action. The claim for loss of rent, relator contends, is a tort claim which must be brought in a separate, in personam action, not in a condemnation proceeding, which is an in rem action.

Landowner maintains that Rule 55.32(a), relating to compulsory counterclaims, is applicable in condemnation proceedings, that his counterclaim arises out of the same transaction or occurrence that is the subject matter of the condemnation proceedings, and that consequently his counterclaim not only *may* be raised in the condemnation proceeding but in fact *must* be raised there.

This case involves a problem which has plagued the judiciary of this state for some time without satisfactory resolution. It arises with increasing frequency because of redevelopment of metropolitan areas. To start redevelopment, the area involved is declared *blighted* by the municipal legislative body and becomes subject to redevelopment. See Mo.Const. art. VI, § 21; Ch. 353. The organization or agency which proposes to redevelop the area is given the power of eminent domain to acquire the blighted area. § 353.130. The *blighted* designation applies to the area as a whole and normally includes some parcels of property (frequently much property) which would not by any usual definition be considered blighted. *Parking Systems, Inc. v. Kansas City Downtown Redevelopment Corp.*, 518 S.W.2d 11 (Mo.1974); *Maryland Plaza Redevelopment Corp. v. Greenberg*, 594 S.W.2d 284 (Mo.App.1979). Frequently the property involved is rental property, either commercial or residential in nature. Because of the blight designation and the general public knowledge that the property will be acquired for redevelopment, an exodus of tenants ensues, sometimes allegedly encouraged by the redevelopment authority, and no equivalent influx of similar tenants occurs. Often times the property depreciates and deteriorates, the neighborhood declines, vandalism and destruction of the property occurs, and the landowner, anticipating the eventual taking of the property, does not expend money to improve his unproductive asset. Under our statutes and our condemnation cases, the *taking* of the property occurs when the condemnor pays the commissioners' award into the registry of the court, or if it refuses to make such payment, as is true in this case, at the time of trial. *See, e.g., Conduit Industrial Redevelopment Corp. v. Luebke*, 397 S.W.2d 671, 674 (Mo.1965); *St. Louis Housing Authority v. Barnes*, 375 S.W.2d 144, 147 (Mo. 1964); *Land Clearance for Redevelopment Authority v. Massood*, 526 S.W.2d 354, 355–57 (Mo.App.1975); *Harris v. L. P. and H. Construction Co.*, 441 S.W.2d 377, 384 (Mo. App.1969); Mo.Const. art. I, § 26. As in the case here before us, it is not uncommon

for a lengthy period of time to elapse between the time when the area is declared *blighted* by the legislative body and the time when the property is *taken* for condemnation purposes. Between the time of *blighting* and the time of *taking*, the property frequently has substantially deteriorated in value at great loss to the landowner. *See Gould v. Land Clearance for Redevelopment Authority*, 610 S.W.2d 360 (Mo.App. 1980).

Under current Missouri law of condemnation, no provision is made for compensating a landowner for the decline in value of his property between the date when the area in which his property lies is declared blighted and the date when the de jure taking occurs. *State ex rel. State Highway Commission v. Samborski*, 463 S.W.2d 896, 902–03 (Mo.1971); *St. Louis Housing Authority v. Barnes*, 375 S.W.2d 144, 147–48 (Mo.1964); *Land Clearance for Redevelopment Authority v. Massood*, 526 S.W.2d 354, 356–57 (Mo. App.1975); *State ex rel. State Highway Commission v. Anderson*, 485 S.W.2d 614 (Mo.App.1972). This is because declaration of blight is treated much the same as the threat of condemnation proceedings, the initiation of condemnation proceedings, and negotiation by the condemnor with property owners for the purchase of their property, all of which are considered neither *taking* nor *damaging* within the meaning of Mo.Const. art. I, § 26. *State ex rel. City of St. Louis v. Beck*, 333 Mo. 1118, 63 S.W.2d 814, 816 (1933); *State ex rel. State Highway Commission v. Samborski*, 463 S.W.2d 896, 902–03 (Mo.1971); *Hamer v. State Highway Commission*, 304 S.W.2d 869, 871 (Mo.1957); *State ex rel. State Highway Commission v. Armacost Motors*, 552 S.W.2d 360, 365 (Mo.App.1977); 4 Nichols on Eminent Domain, § 12.3151[5], (3rd ed. Sackman & VanBrunt 1980), notes 25–27; Annot. 37 A.L.R.3d 127 (1971).

In addition, with regard to the *taking* clause of the Fifth Amendment of the United States Constitution, the Supreme Court

in *Danforth v. United States*, 308 U.S. 271, 285, 60 S.Ct. 231, 236, 84 L.Ed. 240 (1939) said, "A reduction or increase in the value of property may occur by reason of legislation for or the beginning or completion of a project. Such changes in value are incidents of ownership. They cannot be considered as 'taking' in the constitutional sense." *Id.* at 285, 60 S.Ct. at 236. "The rationale of the *Danforth* case has been applied in a great many cases from diverse jurisdictions over a period of many years to deny compensation based on the theory that the threat of condemnation constitutes an actual taking." 4 Nichols on Eminent Domain § 12.3151[5], p. 12–483 (3d ed. Sackman and VanBrunt 1980). *See* 2 Nichols on Eminent Domain § 6.13 (3d ed. Sackman and VanBrunt 1980). *Danforth* concerned lands taken pursuant to federal flood control legislation. Urban redevelopment was not involved.

It is the necessity created by the statute for declaring the area a "blighted area" which distinguishes the redevelopment case from general condemnation proceedings and which may result in the unique type of damage here alleged and claimed by the owner.

■ Landowner suggests that we should afford him relief by declaring that our rules authorize the filing of his counterclaim. Chapter 523 establishes special and specific procedures for condemnation. Civil Rule 86 cannot be said to do more than paraphrase Chapter 523 without supplementing or adding additional procedures or altering those established in Chapter 523. Neither Chapter 523 nor Rule 86 makes any provision for counterclaims. Section 523.050.2 and Rule 86.08 both manifest a clear intent that if and when the commissioners' assessment of damages is excepted to by one or both of the parties, the subsequent jury trial for assessment of damages is to focus solely on the amount of compensation to be paid to the condemnee for his property.[3] The jury

---

3. Section 523.050.2 provides in pertinent part: "2. Such new appraisement [ordered after written exceptions to the commissioners' appraisal have been filed] shall, at the request of either party, be made by a jury, under the supervision of the court, as in ordinary cases of inquiry of

is in effect required to do exactly what was previously done by the commissioners. *See* §§ 523.040–.050. Current Missouri statutes and our present Rule 86 make no specific provisions for the filing of a counterclaim by the condemnee in a condemnation proceeding.

Landowner argues however, that Rule 55.32(a), which authorizes compulsory counterclaims under certain circumstances, is by implication applicable to condemnation proceedings.

■ Rule 86 is a special rule dealing exclusively with condemnation proceedings. Rule 55.32(a) deals in general terms with compulsory counterclaims in civil actions. *See* Rules 41.01 and 41.06. Landowner argues that condemnation proceedings are "civil actions". *See* Rule 42.01.[4] Rule 55.32(a) therefore arguably is applicable to condemnation proceedings. *See* Rules 41.01, 41.06, and 42.01. As observed above, Rule 86 nowhere makes provision for counterclaims. We have an apparent conflict between a general rule and special rule concerning the same subject. The reasoning of *State v. Bey*, 599 S.W.2d 243, 245–46 (Mo.App.1980), that "Where one statute deals with the subject generally and another statute deals with a part of the same subject in a more minute and definite way, repugnancy between them will be resolved in favor of the special statute over the general..." is equally applicable in the case of general and specific or special rules of court. Rule 86 being a special rule must prevail over the general rule to an extent

that they are in conflict. The relation between Rule 86 and other rules of Civil procedure was expressed in *Conduit Industrial Redevelopment Corp. v. Luebke*, 397 S.W.2d 671, 674 (Mo.1965), where it was declared that the Missouri rules of civil procedure other than Rule 86 "may be applicable where necessary to fill gaps and expedite proceedings, ... [but not] all civil procedure has been grafted onto condemnation proceedings without limitations as to controversies involving issues unrelated to condemnation." *See* Rules 41.01(a), 41.06, and 43.01. Other rules of civil procedure apply in condemnation proceedings only when they are consistent with Rule 86. *State ex rel. R.L.W. v. Billings*, 451 S.W.2d 125, 128 (Mo. banc 1970); *Stacy v. Dept. of Public Health & Welfare*, 468 S.W.2d 651, 653 (Mo. App.1971); *Harris v. L.P. & H. Construction Co.*, 441 S.W.2d 377, 383 (Mo.App.1969); *see State ex rel. N.W. Elec. Power Corporation, Inc. v. Buckstead*, 399 S.W.2d 622 (Mo. App.1966). It follows that Rule 55.32(a), which governs compulsory counterclaims in civil proceedings, can apply to condemnation proceedings only if it is consistent with Rule 86.

■ The counterclaim brought by landowner prays for damages equal to the amount of rent he allegedly has been losing by reason of the pendency of the condemnation proceedings. Such a claim is a personal action sounding in tort. *State ex rel. City of St. Louis v. Beck*, 333 Mo. 1118, 63 S.W.2d 814, 815 (1933); *Accord, Land Clearance Redevelopment Authority v. Morrison*, 457 S.W.2d 185, 193 (Mo. banc 1970); *St.*

damages; ... and any subsequent proceedings shall only affect the amount of compensation to be allowed."

Very similar language is contained in Rule 86.08, which provides in pertinent part:

Upon the filing of ... [exceptions to the report of the commissioners appointed by the court to assess damages owing to the landowner for condemnation of their land], the issue of the amount of damages sustained by ... the defendant's property ... as a result of the appropriation, shall be submitted to a jury, or, if a jury be waived, to the court, to be tried as in ordinary cases of inquiry of damages. Notwithstanding said objections, the condemnee may, after paying the amount of the commissioners' award to said clerk of

the court for the owner or owners of any property involved, take possession of the property or subject it to the public use set out in the condemnation petition, and any subsequent proceedings shall only affect the amount or division of the compensation allowed.

This Court interpreted the language quoted from Rule 86.08 in *Conduit Industrial Redevelopment Corp. v. Luebke*, 397 S.W.2d 671, 674 (Mo.1965), and concluded, "This is a strong indication of intention to limit condemnation procedure to condemnation issues...."

4. Rule 42.01 states: "There shall be one form of action to be known as 'civil action' ".

*Louis Housing Authority v. Barnes*, 375 S.W.2d 144, 148 (Mo.1964). It does not involve damage to the property itself. *City of St. Louis v. Beck*, 63 S.W.2d at 816; *see Hamer v. State Highway Commission*, 304 S.W.2d 869, 871 (Mo.1957). Rule 86.08 demonstrates a clear intent to focus the jury trial on the issue of the amount of compensation to be paid to the condemnee for taking his property. To allow landowner to raise his counterclaim would be to expand the range of questions considered beyond the amount of compensation to be paid to the condemnee for taking his property, and would be inconsistent with the intent of Rule 86.08 and the statutes which it paraphrases. We conclude that Rule 55.32(a) as presently written,[5] is not applicable in condemnation proceedings.

The ideal solution to landowner's problem would be for the legislature to make provision for the allowance of damages in appropriate circumstances and upon proper proof of loss or damage, or to provide for a different *time of taking* in cases where the condemnor has cast a cloud of blight upon the property in advance of the actual taking. In the past, attempts have been made in the legislature to make provision for the granting of relief such as that sought herein by the landowner. Illustrative of such attempts are Senate Bill 549, 80th General Assembly, Second Regular Session 1980,[6] and Senate Bill 413, 80th General Assembly, First Regular Session, 1979. These bills were directed at changing the provisions of Chapter 523, our general condemnation act. We cannot say whether such an act might

have been viewed more favorably had it been limited to the unique situation of urban redevelopment, in which a long period of time frequently separates the declaration of blight from the eventual date of legal taking in condemnation proceedings. In any event, legislative relief is not a viable alternative as far as relief in this case is concerned.

Pending the granting of a more expeditious form of relief by the legislature, or modification of our present rules of civil procedure by the Court, landowner's relief lies in pursuing in a separate action the claim now alleged and stated in his counterclaim. Our prior cases have recognized such a right on the part of the landowner. *Land Clearance Redevelopment Authority v. Morrison*, 457 S.W.2d 185, 193 (Mo. banc 1970); *State ex rel. City of St. Louis v. Beck*, 333 Mo. 1118, 63 S.W.2d 814, 817 (1933); *State ex rel. State Highway Commission v. Wilcox*, 535 S.W.2d 131, 135 (Mo. App.1976); *Land Clearance for Redevelopment Authority v. Massood*, 526 S.W.2d at 358.

The preliminary writ of prohibition is ordered made permanent.

All concur.

---

5. The court is aware that our Rules Committee is considering a revision of Rule 86 which would specifically make Rules 41 through 101 applicable to condemnation proceedings subsequent to the filing of exceptions, thereby permitting the filing of counterclaims pursuant to Rule 55.32. Regardless of whether or not the recommendation for such a change will be adopted by this Court, the mere fact it is being considered is some indication that our Rules Committee does not believe that counterclaims are authorized in condemnation proceedings under the current formulation of our rules. *See Conduit Industrial Redevelopment Corp. v. Luebke*, 397 S.W.2d 671, 674 (Mo.1965) (holding that crossclaim (Rule 55.32(f)) was not authorized in condemnation proceedings.)

6. Senate Bill No. 549, among other things, provided:

4. In addition, the landowners shall receive just compensation for any damaging of the property or for any diminution in the value of the property prior to the date of taking, by the project for which the property is condemned, or by any announcements or acts of of the condemning authority, its officials, employees, agents, or contractors concerning such project, if the trier of the fact shall find that said damages or diminution in the value of the property are proximately caused thereby.