John **CHRISTIE,** Plaintiff-Respondent,

v.

Hanno **WEBER,** Defendant-Appellant.

No. 46402.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 8, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 13, 1983.

Application to Transfer Denied
Jan. 17, 1984.

Gary William Bomkamp, St. Louis, for defendant-appellant.

Daniel R. Devereaux, St. Louis, for plaintiff-respondent.

SMITH, Judge.

Defendant appeals from the action of the trial court in sustaining plaintiff's motion for new trial on the basis that the verdict for defendant was against the weight of the evidence. Our review of such an order is limited to determining whether there was sufficient substantial evidence to authorize a verdict for plaintiff. If there was, then the discretionary authority of the trial court to grant a new trial because the verdict is against the weight of the evidence is beyond appellate review. *Robinson v. Wampler,* 389 S.W.2d 757 (Mo.1965) [4, 5]. We therefore limit our examination of the record to the sufficiency looking to that evidence favorable to plaintiff and giving him all reasonable inferences to be drawn therefrom.

Defendant, a design architect, and his then wife purchased a home in University City in 1973. Next to the outdoor patio was an open and unprotected stairwell. Defendant made certain improvements to the patio and constructed a wooden planter box at the edge of the patio next to the stairwell. He then constructed a "shelf" or "bench" eighteen inches high running from the wall of the house to the planter, a distance of about four feet. Defendant testified this structure was intended to be a shelf for holding plants and an hibachi. Plaintiff's evidence was that regardless of defendant's intent the structure gave the appearance of a bench and invited such use.

Defendant admitted the shelf could be mistaken for a bench. Defendant testified the "shelf/bench" was intended to serve as a barrier to prevent persons on the patio from falling into the stairwell.

In March 1976, the marriage of defendant and his wife was dissolved and defendant vacated the premises. Pursuant to the separation agreement approved by the dissolution court, wife transferred her interest in the property to defendant. She was, however, allowed to stay on the premises as a tenant paying monthly rent to defendant. The agreement specifically provided that the wife was responsible for maintaining the property in its present condition and would pay for repairs of any item "which has a cost of repair of up to $400.00." The husband was responsible for repair of items in excess of that amount but only when notified by the wife that an item required repair.

In late July 1978, the plaintiff was visiting the former wife in the home. He went on the patio to prepare hamburgers for his son and her children. While barbecuing, he sat on the bench. It "broke" and he "fell over backwards" into the stairwell. He sustained injuries including a permanent loss of hearing in one ear.

In reviewing the submissibility of plaintiff's case we are somewhat handicapped by the imprecision of his theory of recovery. The petition alleges several acts of negligence some of which are extraneous to the facts of plaintiff's injury. The verdict-directing instruction carries a similar mixture to the jury, and plaintiff's brief does not delineate with precision what negligence of defendant caused his injury. We will attempt to separate out the various possibilities and determine the submissibility of each.

■ There was some evidence that defendant was negligent in failing to construct a higher barrier to the stairwell. That may be, but it has nothing to do with this case. Plaintiff did not walk into the stairwell, step over the barrier, or trip on the barrier. He sat on the barrier and it broke. The height is also regarded as important by the plaintiff in determining whether the item constructed was a bench or a shelf. It was the height of a bench and was constructed so as to resemble a bench. We believe a jury could have found that whatever defendant's intention as to use he should have anticipated its use as a bench. With that potential use foreseeable, defendant would have a duty to construct the bench so as not to be dangerous when used for that purpose.

■ Defendant had no duty, however, to maintain the bench in a safe condition after March 1976. Generally speaking a landlord has no duty to make repairs on a tenant's premises other than on common grounds or when he retains control of the premises for that purpose and promises to repair. *Woods v. Gould,* 515 S.W.2d 592 (Mo.App.1968) [1]. This bench was not located on common grounds and there is no evidence of a retention of control. Defendant was specifically relieved of the burden for repairs costing less than $400. The only evidence in this case was that maintenance, repair, or replacement of the bench would have cost no more than $200. Additionally, the separation agreement provided that defendant was obliged to make repairs exceeding $400 when the need for such repairs was called to his attention. The need for maintaining, repairing or replacing this bench was never called to his attention. Defendant's negligence must be determined therefore by whether the bench as originally constructed was defective and whether that defect caused plaintiff's injuries. Another possibility is that the bench had become unsafe prior to defendant leaving the premises in March 1976 and was not repaired by him prior thereto. As to that possibility there is no evidence that the condition of the bench changed between its construction and March 1976.

■ We turn then to the original construction. There was evidence that the bench was not properly constructed. A carpenter, testifying as an expert, opined that the lap joints used in the construction were reversed. This reversal resulted in the

weight of, and on, the bench being transmitted to the nails holding the end of the bench to the planter. The expert was unable to state the exact load bearing capabilities of the bench as constructed. During his direct examination he testified it would be "speculation" as to whether the bench was sufficient to enable an adult to sit on it although he subsequently testified it would hold light loads and he "wouldn't trust it to support a person's weight." The only other evidence of weight-bearing capacity was defendant's estimate of 300–400 pounds. We do not consider that testimony. There was also evidence that after defendant vacated the premises the ex-wife or one of her children utilized bricks to support one end of the bench which had pulled out from either the planter or the wall. The expert testified to his awareness of this condition and that the stability of the bricks would determine the stability of the bench itself. This condition was a change from the original construction. This condition indicated to the expert a prior failure of the bench which could have been caused by weather, or a load dropping on it, or from underdesign. The expert did not give an opinion on which of these possibilities was the cause of the failure. No estimate of the expected life of the bench if properly constructed was given by the expert. The expert did not give any opinion as to what caused the bench to break or collapse when plaintiff sat on it. The bench, introduced into evidence, does not show any break in the sides. It did not break in two.

There was some evidence that the bricks were in fact supporting the planter to which the bench was attached rather than the bench itself but again there was no evidence of what actually caused the collapse. There was also some evidence that both ends of the bench were supported by bricks at the time of the accident.

It is questionable that the evidence here is sufficient to establish the inadequacy of the bench at the time of its construction. But more importantly it is clear that the bench as originally constructed had been changed in construction after defendant vacated the premises. The tenant or members of her family became aware the bench or the planter to which it was attached no longer maintained their structural integrity. One of them attempted to correct this by the use of bricks. That represented an attempt by the tenant to repair a known dangerous condition. The law to be applied in that situation is stated in *Duke v. Missouri Pacific Railroad Company*, 303 S.W.2d 613 (Mo.1957) [4] (quoting from C.J.S. Negligence § 111):

" 'Where a second actor has or should have become aware of the existence of a potential danger created by the negligence of an original tort-feasor and thereafter, by an independent act of negligence, brings about an accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause' . . .

'A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated, and efficient cause of the injury, even though the injury would not have occurred but for such condition or occasion. If no danger existed in the condition except because of the independent cause, such condition was not the proximate cause; and, if an independent negligent act or defective condition sets into operation the circumstances which result in injury because of the prior defective condition, such subsequent act or condition is the proximate cause.' "
*See also Clymer v. Tennison*, 384 S.W.2d 829 (Mo.App.1964) [8–11].

Giving the evidence the most favorable interpretation possible for plaintiff, it does not establish whether the bench collapsed as a result of defendant's original construction or the wife's subsequent repair. Neither inference is more reasonable than the other and the evidence therefore supports neither. *Clymer v. Tennison, supra*, [5–7]. What it does establish is that the tenant was aware

of the potential danger and attempted to repair it and that the original condition was therefore merely a circumstance of the accident and not its proximate cause. Plaintiff failed to establish that defendant's actions caused his injury and therefore failed to make a submissible case.

Order of the trial court reversed with instructions to reinstate the verdict.

GAERTNER, P.J., and STEPHAN, J., concur.