**Donald E. ROTH, et al.,
Plaintiffs-Respondents,**

v.

**STATE HIGHWAY COMMISSION OF MISSOURI, Defendant-Appellant.**

No. 47442.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 16, 1984.

Motion For Rehearing and Transfer
Denied Nov. 20, 1984.

Transferred to Supreme Court
Jan. 15, 1985.

Retransferred to Court of Appeals
May 14, 1985.

Original Opinion Reinstated
May 21, 1985.

John Wheelan Maupin, Kirkwood, for defendant-appellant.

Samuel C. Ebling, St. Louis, for plaintiffs-respondents.

STEPHAN, Judge.

Defendant State Highway Commission of Missouri appeals from the trial court's granting of a motion for new trial on the ground that the verdict for defendant was against the weight of the evidence. Plaintiff's action against defendant is in the nature of a claim for inverse condemnation, in which plaintiff sought damages for the interference with the use of his property.

Plaintiff owned a tract of land of approximately 84 acres in St. Louis County located partially in the Village of Bel-Ridge and partially in the Village (now City) of St. John. This property was in the pathway of the Innerbelt Highway (now Interstate Route 170), and a portion of it was condemned ultimately for highway purposes by defendant. Prior to the condemnation, the tract was zoned for industrial use under the St. John and Bel-Ridge zoning codes, and the land was formally platted into an industrial park known as the "Rock Road Industrial Center."

On October 28, 1968, Mr. James Roberts, Division Engineer for defendant, and Mr. Lancaster, another Highway Commission employee, attended a meeting of the Board of Trustees of the Village of Bel-Ridge. In January, 1970, Roberts attended similar meetings at the Board of Trustees in the Village of St. John and again at the Board in Bel-Ridge. At each of these meetings, Roberts discussed the impending Innerbelt Highway construction and the need to prevent any building permits from being issued to the people owning the land involved.

Additionally, Roberts sent correspondence to the Villages of St. John and Bel-Ridge in November, 1969, asking that these municipalities halt plaintiff's development of the Rock Road Industrial Center. Roberts sent letters to the village clerks of St. John and Bel-Ridge in May, 1970, seeking cooperation from these municipalities and again requesting that no building permits be issued to plaintiff. In October, 1973, the State Highway Engineer wrote to the Village of Bel-Ridge, asking that it refuse rezoning of the tract. Plaintiff testified that, when he applied for building permits in St. John, the city engineer told plaintiff, "[O]ver my dead body will you get [a building permit] until you settle with the Highway Department."

Defendant formally approved the acquisition of the property by purchase or condemnation on March 16, 1971. An offer of $465,000.00 was made to plaintiff in July, 1971, which plaintiff refused as being unrealistic. In April 1970, defendant's District Right of Way Agent, Charles Sample, estimated damages to plaintiff's land resulting from the proposed taking at $2,250,000. In July 1970, two other employees of defendant appraised the damages at $1,543,278 and $1,409,576, respectively. Plaintiff met with representatives of defendant in January, 1972, August, 1973, and October, 1973, and the offer of $465,000.00 was restated. Plaintiff refused the offers and requested that the Commission go forward with the condemnation. He received repeated assurances this would be done. Instead, in May, 1974, defendant increased its offer to $522,300, which plaintiff refused.

Plaintiff, an attorney representing him in another condemnation matter with the defendant Commission, and a Commission attorney met in the fall of 1974 to discuss the other piece of property owned by plaintiff which was also located in the path of the Innerbelt Highway. Plaintiff testified that defendant's attorney told him "that unless we settled this other case on his terms, he would not file the condemnation petition that he had ready to file..." which involved the property in the instant case. Based on a review of two additional appraisals completed on the property in 1975, defendant approved a new offer of $985,800 to plaintiff on January 19, 1976. The new offer was presented to plaintiff on February 2, 1976, which plaintiff refused. Defendant filed its condemnation suit for plaintiff's property on April 19, 1976, and paid the Commissioners' award into the court's registry on September 24, 1976.

Plaintiff thereafter filed this action against defendant for compensation for

pre-condemnation injury. At trial, evidence was adduced from which a jury could find that, because of the tactics of defendant and its agents, plaintiff suffered substantial monetary loss by being prevented from developing the eighty-four acre tract during the seven year delay between defendant's announcement of its condemnation plans and the filing of the condemnation suit. After the jury returned a verdict for defendant, the trial court granted plaintiff's motion for new trial on the ground that the verdict was against the weight of the evidence.

■ The power to enter such order derives from Rule 78.02; and, when entered, the order is viewed as presumptively correct by an appellate court. *Fischer v. Famous-Barr Company,* 646 S.W.2d 819, 821 (Mo.App.1982). "Our review of such an order is limited to determining whether there was sufficient substantial evidence to authorize a verdict for plaintiff. If there was, then the discretionary authority of the trial court to grant a new trial because the verdict is against the weight of the evidence is beyond appellate review." *Christie v. Weber,* 661 S.W.2d 840, 841 (Mo.App. 1983).

Defendant's sole point on appeal challenges the sufficiency of the evidence in the foregoing regard. Limiting our examination of the record to the evidence favorable to the plaintiff and giving him the benefit of all reasonable inferences to be drawn therefrom, *Christie,* supra, we find the evidence sufficient and affirm.

■ Plaintiff's claim is premised on Article I, § 26, Constitution of Missouri, which provides in part, "... private property shall not be taken or damaged for public use without just compensation." That section also provides that until such compensation is paid to the owner, or into court for him, "the property shall not be disturbed or the proprietary rights of the owner therein divested." This provision is "self-enforcing" and an action may be brought "directly thereunder." *Wells v. State Highway Commission,* 503 S.W.2d 689, 690 (Mo. 1973).

■ As the language of the quoted section indicates, it is not necessary that a landowner show an actual physical taking of the property to prosecute a claim such as the one in the instant case. He must plead and prove, however, "an invasion or an appropriation of some valuable property right which the landowner has to the legal and proper use of his property, which invasion or appropriation ... directly and specially affect[s] the landowner to his injury." *Hamer v. State Highway Commission,* 304 S.W.2d 869, 871 (Mo.1957). It has been recognized that some delay prior to and during the pendency of condemnation proceedings is unavoidable and that, where it is a natural consequence of the proper exercise of the right of eminent domain, it does not give rise to a cause of action such as the one asserted here. As our Supreme Court said in Land Clearance For Redevelopment Authority of the *City of St. Louis v. Morrison,* 457 S.W.2d 185, 198 (Mo.banc 1970), "the constitutional obligation does not and cannot guarantee an absolutely perfect system of reimbursement for every owner whose property is adversely affected by activity of a public body." But the Court went on to say, "this is not a situation of aggravated delay or untoward activity on the part of the Authority ... If such cases arise in Missouri, they will be dealt with on their facts." *Id.,* 199. Although the parties cite no Missouri cases, and our research has revealed none, in which a landowner has successfully prosecuted such a claim, the propriety and viability of such a cause of action was recently acknowledged in *State ex rel. Washington University Medical Center Redevelopment Corp. v. Gaertner,* 626 S.W.2d 373, 378 (Mo. banc 1982): "Our prior cases have recognized such a right on the part of the landowner."

■ From our review of this record, we have concluded there is substantial evidence from which a jury could find "aggravated delay" in the passage of seven years from the announcement by defendant of its condemnation plans to its paying of the

funds into court, as well as defendant's failure to employ methods available to it to expedite compensation to plaintiff, and its repeated but long unfulfilled promises to institute formal condemnation proceedings. Similarly, a jury could well find "untoward activity" on the part of defendant and its agents in their many supplications to the municipalities to deny plaintiff building permits and in the statement made by one of defendant's attorneys to plaintiff that, unless plaintiff settled a totally different case with defendant, the condemnation petition relating to this land would not be filed.

In our view, such a case as was referred to in *Morrison,* supra, could be found to have arisen in Missouri, and it should be dealt with on its facts. The trial court did not abuse its discretion in granting a new trial on the ground that the verdict was against the weight of the evidence.

Affirmed.

GAERTNER, P.J., and SMITH, J., concur.