**Brown HARRIS II, Trustee for the Christopher Harris Trust, Appellant,**

v.

**MISSOURI DEPARTMENT OF CONSERVATION, Respondent.**

No. WD 39941.

Missouri Court of Appeals, Western District.

Aug. 16, 1988.

Robert B. Thomson, Kansas City, for appellant.

Robert J. Swift, Jr., Jefferson City, for respondent.

Before CLARK, P.J., and LOWENSTEIN and FENNER, JJ.

LOWENSTEIN, Judge.

This is a case for damages for inverse condemnation. It comes on for appeal following the granting of the dismissal of plaintiff's petition for failure to state a cause of action. The plaintiff is trustee for a trust which owns a 888 acre tract of land which (totally) encompasses a 230 acre lake. The petition alleges that in May, 1983, "Plaintiff notified the Missouri Department of Conservation of its intent to commercially fish the property and to seek Defendant's assistance and knowledge in undertaking the same. However, Defendant, without a hearing or right to appear, declared that such lake was 'water of the

state' and fish could not be removed commercially therefrom without violating Chapter 252 of the Revised Statutes of Missouri and the rules and regulations of the Conservation Commission." The petition states the right to commercially fish the lake was a valuable property right taken by the state without compensation. The petition continues: "It was the Defendant's design and goal to take from the Plaintiff this property right without just and true compensation and without due process of law. To further this objective, Defendant desired to acquire Plaintiff's property for the public at the lowest price possible with no regard for fair market value." The plaintiff went on to state the defendant Commission caused a criminal charge to issue for the attempt to commercially fish a state waterway.

There are additional twists to the case making it somewhat unusual. The Commission made no attempt to obtain the land under eminent domain, but, according to the trust, the denial of commercial fishing rights and the pressing of charges by the Commission was done to cause the trust financial distress, and "[A]s a result of foreclosure proceedings on the property instituted by the lienholder due to the cessation of funds from the fishing operation, Plaintiff was compelled to sell the property to Defendant at less than its fair market value in order to avoid the loss of Plaintiff's entire equity therein." Faced with foreclosure the dismissed petition states, it sold the land in response to a "take it or leave it" non-negotiable offer by the Commission. So, in fact, the trust sold the property at below market value. It is for this difference that the trust prayed for damages of $1,250,000. The crux of the complaint is the Commission had "a plan to acquire Plaintiff's property through inverse condemnation without paying fair and just compensation." The trial court sustained the Commission's motion to dismiss for failure to state a claim.

The plaintiff, prior to this lawsuit, and without the aid of an attorney, filed a civil suit in United States District Court for a 42 U.S.C. Section 1983 action. The dismissal

of federal suit was upheld in *Brown Harris II v. Missouri Conservation Commission,* 790 F.2d 678 (8th Cir.1986), for the reasons the plaintiff could have requested state judicial review of the designation of the lake as state waters, and that they could have brought an inverse condemnation action in state court.

The issue of authority is important to any consideration of action by a state agency. The Missouri Constitution vests in the conservation commission:

> The control, management, restoration, conservation and regulation of the bird, fish, game, forestry and all wildlife resources of the state, including hatcheries, sanctuaries, refuges, reservations and all other property owned, acquired or used for such purposes and the acquisition and establishment thereof, and the administration of all laws pertaining thereto....

Missouri Const. Art. IV, § 40(a). "The Commission may acquire by purchase, gift, eminent domain, or otherwise, all property necessary, useful or convenient for its purpose...." Mo. Const. Art. IV, § 41. Missouri statutes create a department of conservation to be headed by the conservation commission. § 252.002.1, R.S.Mo.1986. All the powers, duties and functions of the conservation commission have been transferred to the department of conservation. § 252.002.2.

In the same chapter, ownership and title to all wildlife of and within the state is declared to be in the State of Missouri. § 252.030. A person who fails to comply with or violates this law or any such rules and regulations does not acquire any title, ownership or possessory right in wildlife, and any person pursuing, taking, killing, possessing or disposing of wildlife is deemed to consent that title to the wildlife remains in the State of Missouri for purposes of control, management, restoration, conservation and regulation. *Id.* No wildlife shall be pursued, taken, killed, possessed or disposed of except in the manner, to the extent and at the time or times permitted by the rules and regulations.

§ 252.040. Wildlife includes fish. § 252.020(3).

Pertinent provisions of the Code of State Regulations are found at 3 C.S.R. 10. The Department of Conservation's definition of waters of the state:

> (44) Waters of the state: All rivers, streams, lakes and other bodies of surface water lying within or forming part of the boundaries of the state which are not entirely confined and located completely upon lands owned or leased by a single person or by two (2) or more persons jointly or as tenants in common and including waters of the United States lying within the state. Waters of the state will include any waters which have been stocked by the state or which are subject to movement of fishes to and from waters of the state.

3 C.S.R. 10–11.805. The permit requirements and exceptions of chapter 5:

> (1) Any person who pursues, takes, transports, ships, buys, sells, possesses or uses wildlife in any manner must first obtain the prescribed hunting, fishing, trapping, or other permit, or be exempted ..., with the following exceptions.
>
> \* \* \* \* \* \*
>
> (k) Any Missouri resident who is the owner of land that wholly encloses a body of water or any member of his immediate household, may fish without permit in said waters. In the case of corporate ownership, this privilege shall apply to those corporate owners whose domicile is on such corporate-owned land.

3 C.S.R. 10–5.205.

> (2) A permit for the taking of wildlife may be issued only to an individual and may be used only by the individual to whom it is issued.... Miscellaneous and commercial permits which do not provide for the taking of wildlife may be issued to a firm, organization or partnership.
>
> \* \* \* \* \* \*
>
> (4) The commission may suspend, revoke or deny a permit for cause, but not until the applicant shall have been afforded reasonable opportunity to be heard by

the commission or its authorized representative.

3 C.S.R. 10–5.215. Under 3 C.S.R. 10.10, the basic requirement for persons commercializing in wildlife is that they possess the prescribed permit and keep records of their transactions available for inspection. 3 C.S.R. 10–10.705.

Questions concerning the Department of Conservation's authority to designate the subject lake as "waters of the state" and thereby prevent appellant's commercial fishing venture are evident from the Department's own rules. First, the definition for waters of the state excludes certain waters entirely confined and located completely upon land owned or leased by a single person or by two or more jointly or as tenants in common. Second, the permit requirements (which may not be at issue here since it is not alleged a permit was applied for) include an exception for owners of land, including corporate owners, which wholly encloses a body of water. Here, the petition alleges a circumstance of total enclosure. It is not clear, however, from the rules what impact ownership of the land by the trust may have in terms of the waters of the state definition, or in terms of the permit requirement. What is clear is that the issue of the Department of Conservation's authority to designate the lake as "waters of the state" should be resolved at trial.

The issue in this case (assuming the Department of Conservation properly exercised its authority in its designation of the lake) is whether or not the plaintiff stated in his pleadings a cause of action for inverse condemnation.

■ The just compensation clause of the fifth amendment to the United States Constitution made applicable to the states through the Fourteenth Amendment, provides that private property shall not be taken for a public use without just compensation. *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897). Moreover, the Missouri Constitution, at Art. I., section 26, also contains a similar just compensation clause. Under the fifth and fourteenth amendments a landowner has a right to challenge land use regulations by way of a suit for inverse condemnation. *First English Evangelical Lutheran Church v. County of Los Angeles*, —— U.S. ——, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). The inverse condemnation action, was originally conceived and developed, to give a landowner a remedy at law when a condemnor physically accomplished a taking or damaging of private property, (which was in result like an act of eminent domain) but which was carried out with none of the procedure nor compensational requirements of an eminent domain procedure. 3 Nichols on Eminent Domain, § 8.1[4][a] (1978). Missouri courts recognize a cause of action for inverse condemnation where private property has been taken or has been damaged for public use. *Page v. Metropolitan St. Louis Sewer District*, 377 S.W.2d 348 (Mo.1964). To state a claim for inverse condemnation, a plaintiff must allege his property was taken or damaged by the state for public use without just compensation. *Mattingly v. St. Louis County*, 569 S.W.2d 251, 252 (Mo.App. 1978). The landowner does not have to show an actual physical taking of property, but must plead and prove "an invasion or an appropriation of some valuable property right which the landowner has to the legal and proper use of his property, which invasion or appropriation ... directly and specially affect[s] the landowner to his injury." *Roth v. State Highway Commission*, 688 S.W.2d 775, 777 (Mo.App.1984) quoting *Hamer v. State Highway Commission*, 304 S.W.2d 869, 871 (Mo.1957). The quintessential issue in this case is whether the act of the Department of Conservation in denominating the lake a state waterway, constituted a taking or a disturbance of a valuable property right belonging to the landowner which resulted in damage or injury.

On a motion to dismiss for failure to state a claim, the court assumes to be true all facts alleged by the petition, as well as all reasonable inferences deduced from those facts. *Shaw v. City of St. Louis*, 664 S.W.2d 572, 574 (Mo.App.1983). The nonsuited petition here states the Commission

**730**

made an improper regulation which the landowner did not have time to contest in court due to the financial hardship resulting from the regulation. It is alleged the circumstances forced the landowner to take less than market value in order to salvage something out of the property which was going to be foreclosed. The Commission defends this case on the grounds that the plaintiff failed to properly contest or appeal the regulation prior to bringing an action in inverse condemnation.

■ While some commentators draw distinctions between a cause of action for inverse condemnation and one for a taking by regulation under the police power, *see, e.g., Ragsdale, A Syntheses and Integration of Supreme Court Precedent Regarding the Regulatory Taking of Land,* 55 UMKC L.Rev. 213 (Winter 1987), others consider specific regulatory actions within the context of inverse condemnation analysis to determine the existence of a regulatory taking, *see, e.g.,* J. Shonkwiler & T. Morgan, *Land Use Litigation* (1986). What is clear, however, is that a landowner has the right to challenge land use regulatior by way of a suit for inverse condemnatic n under both the federal and Missouri constitutions. *See generally,* 8 Nichols on Eminent Domain, § 14.07[1]–[3] (1988).

■ The United States Supreme Court has long recognized a regulation which goes too far is a taking. *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922). Police power actions which limit the use of private property can in certain instances constitute a de facto exercise under eminent domain with the landowner being entitled to just compensation. *Keystone Bituminous Coal Ass'n v. De Benedictis,* 480 U.S. 470, 107 S.Ct. 1232, 1247, 94 L.Ed.2d 472 (1987). There is no litmus test for determining whether there has been a taking. Rather, most determinations must be made on a case by case basis. *Hodel v. Virginia Surface Mining & Reclamation Assoc., Inc.,* 452 U.S. 264, 294–95, 101 S.Ct. 2352, 2369–70, 69 L.Ed.2d 1 (1981); *Orion v. State of Washington,* 109 Wash.2d 621, 747 P.2d 1062, 1075 (banc 1987). The Supreme Court has eschewed set formulas for determining when a valid regulation ends and a taking begins, *Goldblatt v. Hempstead,* 369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L.Ed.2d 130 (1962), or "when 'justice and fairness' require that economic injuries caused by public action be compensated by the government rather than remain disproportionately concentrated on a few persons." *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). The Court has applied a balancing test, with inquiry into factors including the economic impact of the regulation, its interference with reasonable investment backed expectation, and the character of governmental action. *Kaiser Aetna v. United States,* 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979). Kaiser owned a private pond and had invested much money in dredging, and in developing the area into an exclusive marina and community open only to members. The United States sought to compel free public access to the marina because Kaiser had dredged a channel between the pond and "navigable water." The Supreme Court held for the landowner and found a taking, saying the regulation went beyond the ordinary regulation for navigation, and interfered with the landowner's "reasonable investment backed expectations." *Id.* at 175, 100 S.Ct. at 390.

■ Not every destruction or injury to property by governmental action amounts to a taking in the constitutional sense. *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 83, 100 S.Ct. 2035, 2041, 64 L.Ed.2d 741 (1980). As noted, whether a governmental action constitutes a taking requires a determination of whether the public at large, rather than a single landowner, must bear the burden of an exercise of state power. *Agins v. Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed. 2d 106 (1980). A land use regulation reasonably related to promotion of the general welfare will not be deemed a taking just because there has been a diminution of property value. *Penn Central,* 438 U.S. at 133, 98 S.Ct. at 2663.

■ The petition here alleges facts, taken as true state a cause of action for a

taking by the sovereign. The landowner should be allowed at an evidentiary hearing to show the regulation or condition on the land did not serve some valid governmental purpose—for if the Commission's regulation prohibiting commercial fishing did not substantially advance a legitimate state interest, then a compensable taking has resulted. *Nollan v. California Coastal Commission*, —— U.S. ——, 107 S.Ct. 3141, 3148, at 3150, 97 L.Ed.2d 677 (1987). In order for the commission to prevail it must prove that its regulatory provision furthered a substantial state interest. The strictures of *Nollan* and *Kaiser* allow a landowner to present proof of a taking for which compensation is required. The trial court, by dismissing the suit precluded plaintiff from presenting proof of a taking. This ruling does not at this early stage attempt to assess the ultimate merits of the plaintiff's action, the court holds pleaded facts, which liberally construed, invoke principles of substantive law upon which relief may be granted. *Crest Communications v. Kuehle*, 754 S.W.2d 563, 568 (Mo. banc 1988).

■ The Respondent Commission raises two bases for affirmance that are jurisdictional in nature. First is the contention that by conveying the property to the commission, appellant defeated any recovery under an inverse condemnation theory, presumably because of mootness. This court disagrees. Unlike the case relied on by the commission, *Shelton v. M & A Electric Power Cooperative*, 451 S.W.2d 375 (Mo. App.1970), no agreement existed between the parties at the time of the designation, when the taking, if any, occurred. The *Shelton* court's apparent conclusion that an inverse condemnation would lie if property is taken or damaged without agreement or legal proceedings is inapplicable since the conveyance occurred *after* the challenged designation. Damages to appellant were suffered at the time of the improper designation. *Barr v. KAMO Electric Corp., Inc.*, 648 S.W.2d 616, 619 (Mo. App.1983). The subsequent conveyance does nothing to negate the key allegation that the designation affected the taking of

a valuable right in the property and devalued his property in the process. *Eldridge v. City of Palo Alto*, 57 Cal.App.3d 613, 129 Cal.Rptr. 575, 587 (1976). In any event, under the peculiar facts of this case it would be unfair to allow the state to take improper action which devalued the property, that led to an immediate foreclosure, resulting in a bargain sale to the wrongdoer.

■ Finally, the state asserts that because appellant did not directly challenge the designation, administratively or through a declaratory judgment action for instance, appellant was properly dismissed out of court. Again, this court disagrees. The provision on which appellant's claim is based, Art. I., § 26 of the Missouri Constitution, is self-enforcing and an action may be brought directly thereunder. *Roth*, 688 S.W.2d at 777. *See also*, 3 Nichols on Eminent Domain at § 8.4[4] (constitutional provisions are self-executing). In addition, the United States Court of Claims has allowed an inverse condemnation action even when judicial review of permit denial was not sought, *see*, *Jentgen v. United States*, 657 F.2d 1210, 1212, 228 Ct.Cl. 527 (1981).

The cause is reversed and remanded. No costs.

All concur.