644 So.2d 527 (1994)
STATE of Florida, DEPARTMENT OF TRANSPORTATION, Appellant,
v.
Eula M. HECKMAN, Freddie K. Heckman, Allan W. Heckman and J & H Salvage and Storage Yards, Inc., Appellees.
No. 93-0978.
District Court of Appeal of Florida, Fourth District.
October 26, 1994.
*528 Thornton J. Williams and Gregory G. Costas of the State of Fla. Dept. of Transp., Tallahassee, for appellant.
David K. Miller, Shaw P. Stiller and Michael R. Kercher of Broad and Cassel, Tallahassee, for appellees.

ON MOTION FOR REHEARING
KLEIN, Judge.
We withdraw our prior opinion filed September 14, 1994, and substitute the following in its place.
The City of Oakland Park required the appellee property owners to convey a seven foot right-of-way across the front of their property to the city in return for a waiving of development requirements. The city subsequently gave the right-of-way to the DOT for the widening of Dixie Highway. The property owners then sued the DOT for inverse condemnation, claiming that the city improperly required them to give up the right-of-way, and that the city was the agent for the DOT. The property owners prevailed; however, we reverse because we agree with the DOT that the appellees cannot recover against it on an agency theory.
The property owners owned three adjoining parcels of land in the City of Oakland Park on one of which they ran a salvage business. They decided to build an indoor gun range on one of the parcels. In order for the property owners to get a building permit the city required platting and a unity of title for two of the parcels. The city was willing to waive the platting requirement in return for a dedication of a seven foot wide strip on the fifty-one feet of one of the parcels that fronted on Dixie Highway.
The property owners objected to giving the city the seven foot wide strip, because it was not on the parcel on which they were building the gun range; however, they did not seek a variance or appeal. Because they wanted to proceed with the gun range they conveyed the seven foot wide strip to the city in June 1988, platting was waived by the city, and they opened the gun range a few months later. Six months later the city conveyed the seven foot wide strip to the DOT to expand Dixie Highway.
In order to complete the Dixie Highway project, the DOT needed a drainage easement on one of the other parcels and filed a petition to condemn it. The property owners filed a counterclaim against the DOT, alleging that the city improperly required the property owners to give up the seven foot wide strip as a condition of getting their building permit, that the city was acting as the agent of the DOT, and that the DOT had thus inversely condemned the property.
The trial court found that there was a taking by inverse condemnation and that the DOT was liable for the improper actions of the city, on a theory of agency by estoppel.
The pertinent findings in the final judgment were:
2. The Court finds that on February 17, 1988, the D.O.T., through the action of its agent, the City of Oakland Park, acquired a seven (7) foot strip of land from the Heckmans for the uncontested public purpose of widening Dixie Highway (SR 811) in the City of Oakland Park. The acquisition was accomplished by a Resolution of the City Commission requiring the Heckmans to dedicate the property to the City in exchange for a waiver of platting requirements requested by the property owners. The City thereafter deeded the property to the D.O.T. for use in highway improvements... .
* * * * * *
5. The City of Oakland Park was determined to acquire the Heckmans' land (Parcel 130) to be used in the ultimate widening of Dixie Highway.
6. There was absolutely no reason for the City of Oakland Park to exercise its police power to require the dedication of a seven (7) foot strip of the Heckmans' property for any reason other than to achieve the intended goal of widening Dixie Highway. The City was acting for their interests and *529 for the use and benefit of the D.O.T. and knew the City would not be involved in the construction phase.
7. The testimony of experts for both parties convinced the Court the utilization of part of the property as a gun range would not affect transportation congestion on Dixie Highway. On the contrary, the evidence establishes the gun range would generate fewer daily person-trips than the use for which the property was originally zoned. Accordingly, requiring dedication of the right-of-way to the City was not related to any anticipated increased traffic generated by the gun range.
8. While a property owner can validly "contract" with a zoning authority to dedicate property for a public purpose in order to obtain the benefits sought from a zoning change, as here, no "contract" could have been established because of the duress of economic coercion employed by the City on the Heckmans to require dedication of the seven (7') feet of right-of-way over their stated objection.
9. The D.O.T. had a long-standing practice of letting local government levels know of its preference in implementing the priority planning for road construction when the cost of acquiring the rights-of-way were reduced by local government contributions, thereby reducing the amount of money needed by the State Legislature to fund highways.
10. The D.O.T. cannot function with blinders on and absolve itself of the responsibility of the City's actions by stating that it did not expressly request it.
11. If the D.O.T. is to reap the benefits of the actions of the City of Oakland Park, which benefits specifically inure to the use and benefit of the people of the State of Florida who will be utilizing this segment of the highway, then the D.O.T. has the responsibility to verify that subordinate political entities which participate by acquiring private property for the project strictly adhere to all requirements for acquisition of private property for public use.
12. The concept of agency applies to the relationship between the D.O.T. and the City. The D.O.T., as the principal, has accepted the benefits of the agent's (City of Oakland Park) action and is estopped to deny the inappropriate appropriation of private property for a public use without the payment of full and just compensation.
13. The Court, therefore, concludes D.O.T. effected a taking of the property described in paragraph 2, above, as of February 17, 1988, the date the City Commission required the dedication of the property from the Heckmans to the City of Oakland Park.
The sole theory alleged by the property owner for inverse condemnation against the DOT was agency. There was no evidence of a direct agency relationship. As the judgment reflects, the court concluded that the DOT, by accepting the property, was estopped to deny that the city was acting as the DOT's agent.
An agency relationship can be created by estoppel. As this court said in Carolina Georgia-Carpet & Textiles, Inc. v. Pelloni, 370 So.2d 450, 451 (Fla. 4th DCA 1979):
The doctrine of agency by estoppel is similar to the doctrine of apparent authority such that there is no significant difference between them. In order to hold the principal liable it must be established (1) that the principal manifested a representation of the agent's authority or knowingly allowed the agent to assume such authority; (2) that the third person in good faith relied upon such representation; and (3) that relying upon such representation such third person has changed his position to his detriment.
We can find no evidence in this record that the DOT did anything which could lead the owners to think that the city was the agent of the DOT. Nor is there any evidence that the owners relied on anything to their detriment. Recovery against the DOT, therefore, cannot be supported under principles of agency by estoppel or apparent authority.
The trial court also concluded that the owners gave up this property because of "the duress of economic coercion employed by the city... ." While we would not condone what the city did here, assuming it was not entitled to require the dedication of the strip, we *530 are not aware of any legal theory under which the DOT would be liable for inverse condemnation. Here, although the owners verbally objected to having to give up the right-of-way, they did not seek a variance or appeal. They gave the city what it wanted, and in return they got what they wanted  a waiver of the city's platting requirement for the development of their property.
The owners, unable to cite Florida precedent for inverse condemnation under these facts, rely on three cases from other jurisdictions: Gaughen v. Commonwealth Dept. of Transportation, 123 Pa.Cmwlth. 550, 554 A.2d 1008 (1989); Orion Corp. v. State, 109 Wash.2d 621, 747 P.2d 1062 (1987) cert. denied, 486 U.S. 1022, 108 S.Ct. 1996, 100 L.Ed.2d 227 (1988); and Roth v. State Hwy. Comm'n, 688 S.W.2d 775 (Mo. Ct. App. 1985). These cases are all distinguishable from the present case in two respects: first, because in each of these cases the property owners did not give up their land in order to develop, and second, because in each of these cases the state was directly involved in preventing the property owner from using the property.
In Gaughen, the state highway department planned to build a highway through the owner's property, but did not have the funds to condemn it. The department repeatedly told the town to delay allowing the development until the state obtained the money to buy the land for the highway. The state also wrote a letter stating that the noise from the future highway would be a problem for the tenants of an apartment building which was part of the property owner's development project. The letter prevented the owner from getting financing.
In Roth, the state department of highways was unable to come to terms with the property owner about the amount to be paid for the right-of-way, but, rather than proceeding with condemnation, instructed the city not to issue a permit until the property owner settled with the state. The city engineer advised the property owner that he would not receive a permit until he settled with the state.
In Orion the property owner wanted to develop tide land property which the county would not permit. The court held that since the county was merely enforcing state regulations governing tide land property, the state could be liable for a taking even though it was the county which was prohibiting development.
In the above cases there was evidence that the states were directly interfering with the property owners' developments, and it was this direct interference which was the basis of the states being liable for a taking. In the present case there was no evidence that anyone other than the city was insisting that the property owners give up the right-of-way. The fact that the city may have done this with the knowledge that the less the right-of-way cost the DOT, the sooner Dixie Highway would be widened, is not enough, in and of itself, to make the DOT liable for the actions of the city on an agency theory.
We are not unsympathetic to property owners being subjected to improper demands by local government as a condition to exercising their constitutional rights to use their property. Government may not insist on a person giving up the constitutional right to receive just compensation when property is taken for a public use, in return for a benefit, where the property sought by the government has little or no relationship to the benefit to the property owner. Dolan v. City of Tigard, ___ U.S. ___, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). In Dolan the Supreme Court recently described that relationship as follows:
We think the "reasonable relationship" test adopted by a majority of the state courts is closer to the federal constitutional norm than either of those previously discussed. But we do not adopt it as such, partly because the term "reasonable relationship" seems confusingly similar to the term "rational basis" which describes the minimal level of scrutiny under the Equal Protection Clause of the Fourteenth Amendment. We think a term such as "rough proportionality" best encapsulates what we hold to be the requirement of the Fifth Amendment. No precise mathematical calculation is required, but the city must make some sort of individualized determination that the required dedication is related both *531 in nature and extent to the impact of the proposed development. (footnote omitted).
Id. at ___, 114 S.Ct. at 2319.
Under the present circumstances, however, an action for inverse condemnation does not lie against the DOT.
We therefore reverse the order finding a compensable inverse taking by the DOT of the right-of-way on Dixie Highway with instructions to enter a judgment in favor of DOT.
GUNTHER, J., concurs.
STEVENSON, J., dissents with opinion.
STEVENSON, Judge, dissenting.
I respectfully dissent because I would affirm the well-reasoned final judgment of the trial court. Contrary to the majority's view, I do not believe that the trial judge's finding of an agency relationship between the City of Oakland Park and the DOT was predicated on the legal theories of agency by estoppel or apparent authority. A careful reading of the final order reveals that the trial court found that an "actual" agency relationship existed between the city and the DOT and then simply stated that the principal (the DOT) was therefore "estopped to deny the inappropriate appropriation of private property for public use."
Whether an actual principal-agent relationship has been created in a particular instance is essentially a question of fact. See McCabe v. Howard, 281 So.2d 362 (Fla. 2d DCA 1973); Bernstein v. Dwork, 320 So.2d 472 (Fla. 3d DCA 1975), cert. denied, 336 So.2d 599 (Fla. 1976); Amerven v. Abaddie, 238 So.2d 321 (Fla. 3d DCA 1970). An agency relationship will exist where the parties agree, either expressly or impliedly, that one will represent and act for the other, and it may be proved by the facts and circumstances of each particular case. See 2 Fla. Jur.2d Agency and Employment § 6 (1977); see also Sapp v. City of Tallahassee, 348 So.2d 363 (Fla. 1st DCA), cert. denied, 354 So.2d 985 (Fla. 1977). In other words, if the evidence leads the trier of fact to conclude that one party has, by their words or conduct, engaged another to act in their behalf, and if the other has so acted, a principal-agent relationship has been established and the principal will be bound by the acts of the agent. 2 Fla.Jur.2d Agency and Employment § 25 (1977).
In view of (a) the DOT's statutory right of plenary control over state highway planning and development (see §§ 335.20(3) & 334.044, Fla. Stat.), (b) the evidence in this case of the assistance rendered by the city to the DOT in developing the Dixie Highway expansion project and (c) the trial court's express finding that the city obtained the property for the use and benefit of the DOT, I cannot conclude that the trial court erred as a matter of law in finding an agency relationship between the city and the DOT.
Lastly, because the trial court was correct in its finding of an agency relationship between the city and the DOT, it is not significant that the economic pressure or coercion was applied directly by the city and not by the DOT. Neither is it significant that the lawsuit was brought against the DOT after the owners had already bowed to the pressure and conveyed the property to the city in June of 1988. The agent acts for the principal and by the agent's acts, the principal must give account.