*Hamilton County*
*Hon. Eugene J. Utz, P.J., Hon. Rupert A. Doan,*
*Hon. Robert H. Gorman, Hon. Lee H. Hildebrandt, Jr.,*
*Hon. Harry T. Klusmeier, Hon. Raymond E. Shannon*

---

**Shopco Group**
**v.**
**Springdale**
*[Cite as 4 AOA 1]*

*Case No. C-890009*
*Hamilton County (1st)*
*Decided June 6, 1990*

*Strauss & Troy, C. Francis Barrett, Esq., and M. Michele Fleming, Esq., 2100 Central Trust Center, 201 East Fifth Street, Cincinnati, Ohio 45202, for Plaintiffs-Appellants.*

*Rendigs, Fry, Kiely & Dennis, Edward R. Goldman, Esq., and Peter L. Ney, Esq., 900 Central Trust Tower, Five West Fourth Street, Cincinnati, Ohio 45202, and Wood & Lamping, David A. Caldwell, Esq., and Kenneth J. Schneider, Esq., 2500 Cincinnati Commerce Center, 6th and Vine Streets, Cincinnati, Ohio 45202, for Defendant-Appellee.*

*Manley, Burke & Fisher and Robert E. Manley, Esq., 4100 Carew Tower, Cincinnati, Ohio 45202, for Amicus Curiae Equitable Life Assurance Society of the U.S.*

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the transcript of the proceedings, the assignments of error, the briefs and arguments of counsel.

Plaintiffs-appellants, The Shopco Group and PYP Corp. (collectively referred to as "Shopco") and General Electric Employee's Activities Association of Evendale Plant, Inc. ("GEEAA"), appeal from the summary judgment entered in favor of defendant-appellee City of Springdale, Ohio, and certified pursuant to Civ. R. 54(B). In their sole assignment of error, the plaintiffs raise the issue of whether the defendant's zoning restrictions upon parcels of real estate held by GEEAA constituted a taking for which compensation should be paid for the period during which the zoning was effective, under the authority of *First English Evangelical Lutheran Church of Glendale, California v. County of Los Angeles* (1987), 482 U.S. 304, 107 S. Ct. 2378. For the reasons that follow, we do not find plaintiffs' assignment of error to be well taken.

Plaintiffs brought suit against the city of Springdale after the Springdale City Council voted on October 7, 1987, to deny their petition to amend the zoning of real estate parcels, held by GEEAA and currently operated as a park, from "R-1-A" Single Family Residence and "GI" General Industrial classifications to a planned unit development ("PUD") that would permit Shopco to develop the site into a regional shopping mall, neighborhood retail center, hotel and office building complex. Plaintiffs' suit sought a declaration that the R-1-A and GI zoning classifications were invalid and constituted a taking of the property, and also sought twenty million dollars in damages to compensate what they claimed to be the difference between the fair market value of the property if rezoned as they requested and its value as it was presently zoned, plus interest from June 9, 1987, the date the Supreme Court of the United States decided *First English, supra.* On August 31, 1988, during the pendency of this suit below, the Springdale City Council voted to amend its zoning of the parcels to "GB" General Business, "OB" Office Business, and "RMF-1" Residential Multi-Family. As previously noted, the trial court entered summary judgment in the defendant's favor on the issue of

damages only, on December 9, 1988, finding that there were no genuine issues of material fact disclosed by the record properly reviewable under Civ. R. 56(C) and that, as a matter of law, there was no unconstitutional "taking" within the meaning of *First English, supra.*

In their sole assignment of error that the trial court erred in granting summary judgment as to their claim for damages, the plaintiffs claim that sufficient evidence was contained in the record to raise a genuine question of material fact precluding summary judgment on the question of whether a taking occurred. In support of their contention, the plaintiffs refer to the statement of Gene Neff, GEEAA's Recreation Director, that because the park site is now surrounded by business and industry, "the present location is no longer situated in an area conducive for recreation," T.d. 66, Ex. 7, at p. E000805. The plaintiffs also refer to the statements of various experts hired by the parties to evaluate the site that the property is "economically unsuited for development as R-1-A," T.d. 79, Ex. A, at p. 1, and that the R-1-A and G-I classifications "do not reflect a sound use of the property, either from a land planning standpoint or an economic standpoint," T.d. 66, Ex. 3, at p. E001340, and to statements that the existing zoning was not reasonable because there was "no possibility for economic development of the subject property under its present zoning classifications" and because the R-1-A and G-I classifications are "counter productive to each other." T.d. 76, Ex. 2. The plaintiffs argue that the property could not be profitably developed in conformance with the zoning restrictions previously in effect, that the restrictions before their amendment, deprived GEEAA of the ability to sell or obtain any economic value from the property, and that such a deprivation amounted to a temporary taking of the property.

In reviewing a summary judgment, the trial and appellate courts use the same standard, that the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and if, when the evidence is so viewed, reasonable minds can come to differing conclusions, the motion should be overruled. *Hounshell v. American States Insurance Co.* (1981), 67 Ohio St. 2d 427, 424 N.E.2d 311. A reviewing court must follow the standards of Civ. R. 56(C), which provides that before summary judgment may be granted, it must be determined that no genuine issue as to any material fact remains to be litigated, the moving party is entitled to judgment as matter of law, and reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 364 N.E.2d 267.

The plaintiffs' claim is based on the Fifth Amendment, which provides in relevant part that "private property [shall not] be taken for public use, without just compensation." The determination of whether a governmental regulation amounts to a constitutional taking under the doctrine of inverse condemnation is not made according to any precise rule and generally requires a weighing of private and public interests. *Agins v. City of Tiburon* (1980), 447 U.S. 255, 260-61, 100 S. Ct. 2138, 2141. Courts will typically find that the application of a general zoning law to a particular property effects a taking if the ordinance does not substantially advance legitimate state interests or denies an owner economically viable use of his land. *Id.* at 260, 100 S. Ct. at 2141. See, also, *Karches v. Cincinnati* (1988), 38 Ohio St. 3d 12, 526 N.E.2d 1350. Although to strike a zoning ordinance on constitutional grounds a party must demonstrate, beyond a fair debate, that the zoning classification is unreasonable and not necessary to the health, safety and welfare of the municipality, *Mayfield-Dorsh, Inc. v. South Euclid* (1981), 68 Ohio St. 2d 156, 429 N.E.2d 159, "[r]ecent cases decided by the Supreme Court raise questions about the propriety of summary judgment of taking claims without a fully developed record." *Naegele Outdoor Advertising, Inc. v. City of Durham* (C.A. 4, 1988), 844 F.2d 172, 175 (citing *Keystone Bituminous Coal Ass'n v. DeBenedictis* (1987), 480 U.S. 470, 107 S. Ct. 1232 and *Agins, supra*).

Each of the cases mentioned above, however, concerns the determination of whether a *permanent* deprivation of at least a portion of a property owner's use of his property constituted a taking. The ability of a property owner to obtain compensation for a *temporary* deprivation of a property owner's rights is addressed by the Supreme Court in *First English Evangelical Lutheran Church v. County of Los Angeles* (1987), 482 U.S. 304, 107 S. Ct. 2378, which states that "'temporary' takings which, as here, deny a landowner all use of his property, are not different in kind from permanent takings, for which the Constitution clearly requires compensation." *Id.* at ___, 107 S. Ct. at 2388.

In *First English,* the Court held that where the government's activities have already worked a taking of "all use" of one's property, no subsequent action by the government, including amendment or withdrawal of the judicially invalidated regulation or exercise of eminent domain, can relieve the government of the duty to provide compensation for the period during which the taking was effective. *Id.* at ___, 107 S. Ct. at 2389. The Court, however, expressly limited its holding to the facts presented, which involved an ordinance that purportedly denied the appellant "all use of its property," and disavowed any application of its holding to "the quite different question that would arise in the case of normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like which are not before us." *Id.*

The plaintiffs now assert that the Supreme Court extended its holding in *First English* to instances in which only a portion of a property owner's rights are temporarily taken, in *Nollan v. California Coastal Commission* (1987), 483 U.S. 825, 107 S. Ct. 3141. In *Nollan,* the Supreme Court determined that the California Coastal Commission's imposition of a condition that a property owner grant the public an easement of access over a portion of his beachfront lot, upon its grant of a permit to replace a bungalow with a larger house, constituted a compensable taking. In its decision, however, the Supreme Court considered the easement to be a permanent physical occupation, "where individuals are given a permanent and continous right to pass to and fro, so that the real property may continuously be traversed, even though no particular individual is permitted to station himself permanently upon the premises." *Id.* at ___, 107 S. Ct. at 3145. In determining whether the burden imposed by the easement constituted a taking, the Supreme Court evaluated the facts according to the concerns noted in permanent "taking" cases such as *Agins, supra.*

We are aware of no binding precedent that extends *First English's* remedy of compensation for temporary takings to facts involving other than a deprivation of "all uses" of the property. See *O'Brien v. City of Columbus* (Feb. 6, 1990), Franklin App. No. 89AP-877, unreported. At least one court in another state, however, has extended *First English's* remedy of damages for an uncompensated, temporary taking of less than all of a property owner's use of his land. *Poirier v. Grand Blanc Twp.* (Mich. App. 1988), 167 Mich. App. 770, 423 N.W.2d 351. The court in *Poirier* drew upon the language in *First English* that "'temporary' takings * * * are not different in kind from permanent takings" in extending the remedy of damages to partial takings. *Id.* at ___, 423 N.W.2d at 353. A comparison of the passage quoted by the *Poirier* court to its unredacted form quoted above at page 7, however, indicates that the *Poirier* court deleted language that indicates that the equivalence of temporary and permanent takings extends only as far as complete, and not partial, takings. See, also, *O'Brien, supra.* We do not, in any event, consider *Poirier* binding precedent.

In the wake of *First English* the weighing analysis contained in *Agins, supra,* continues to be applied in cases involving permanent takings, such as *Karches, supra,* and *Valley Auto Lease of Chagrin Falls, Inc. v. Auburn Twp. Bd. of Zoning Appeals* (1988), 38 Ohio St. 3d 184, 527 N.E.2d 825. We do not believe, however, that such a weighing analysis is applicable to temporary-taking cases requiring evidence that the owner was deprived of all use of the property. Although the *Agins* analysis apparently was applied to permit compensation for a temporary taking in *Wheeler v. City of Pleasant Grove* (C.A. 5, 1981), 664 F.2d 99, the liability portion of that case was decided before the Supreme Court's decision in *First English, supra,*[1] although the court anticipated the Supreme Court's allowance of damages in certain situations. See, also, *Wheeler v. City of Pleasant Grove* (Former C.A. 5, 1987), 833 F.2d 267, later appeal (1990), 896 F.2d 1347. The Ninth Circuit Court of Appeals similarly applied the *Agins* weighing analysis in a temporary taking case, *Moore v. City of Costa Mesa* (C.A. 9, 1989), 886 F.2d 260, but also distinguished *First English* on the ground that the regulation at issue affected only a small portion of the owner's property and did not deprive the owner of substantially all use of his property.[2] In light of the Supreme Court's limitation of its holding in *First English* to cases involving a deprivation of all use of an owner's property, we hold that the trial court did not err when it granted summary judgment on the ground that the plaintiffs were not denied all use of their property as required for compensation for a temporary taking under *First English,* 482 U.S. at 321, 107 S. Ct. at 2389, without engaging in further analysis under *Agins* in which the interests of the public and the private property owner are balanced.

We also hold that the trial court did not err when it granted summary judgment because there was not before it any evidence that support-

4

ed the inference that the plaintiffs had been deprived of all use of their property, even though the materials before the court indicated that they may have been deprived of some property rights related to economic development. Although the right to dispose of a piece of property has been described as one of the property rights in a physical thing, along with the right to possess and use it, *Loretto v. Teleprompter Manhattan CATV Corp.* (1982), 458 U.S. 419, 435, 102 S. Ct. 3164, 3176, and the deprivation of rights to develop or to secure reasonable investment-backed expectations have been viewed as subject to compensation in permanent-taking cases, see *Keystone Coal Association v. DeBenedictis* (1987), 480 U.S. 470, 107 S. Ct. 1232; *Kaiser Aetna v. United States* (1979), 444 U.S. 164, 100 S. Ct. 383; *Seawall Associates v. City of New York* (N.Y. App. 1989), 74 N.Y. 2d 92, 542 N.E.2d 1059, such cases have involved either permanent takings, see *Keystone, supra,* and *Kaiser Aetna, supra,* or a physical occupation of property that constitutes a per se compensable taking. *Seawall Associates, supra.* A deprivation of such economic or development rights does not amount to a denial of all use of one's property, including the rights of possession and use of the property. See *First English Evangelical Lutheran Church of Glendale v. Los Angeles* (Cal. App. 2d Dist., 1989), 210 Cal. App. 3d 1353, 258 Cal. Rptr. 893, as modified on denial of rehearing, June 23, 1989, review denied Aug. 25, 1989, certiorari den. (1990), ___ U.S. ___, 110 S. Ct. 866.

The record discloses that the plaintiffs were not denied all use of their property. The testimony given in the depositions of the plaintiff's expert, John E. Pflum, and GEEAA past president and current chairman of its facilities review committee Thomas R. Wahl indicates that GEEAA continues to use the park as it has for over twenty-five years; that the city of Springdale's failure to rezone the park in response to the changed surroundings did not interrupt the activities performed at the park; and that the property had a value. See T.d. 66, at 54. Even if we accept the plaintiff's assertions that the property could not be profitably developed under the R-1-A and G-I zoning restrictions as truth, the assertions do not negate the fact of GEEAA's continued use and possession of the park. We, therefore, affirm the judgment of the trial court.

*Judgment affirmed.*

SHANNON, P.J., KLUSMEIER and UTZ, JJ.

---

[1] We note that *Wheeler* concerned a "bald attempt to revoke an already authorized building permit" by an ordinance clearly lacking a rational purpose. *Wheeler, supra* at 100. It is unclear, however, whether that case was decided on Fifth Amendment grounds or due process grounds under Section 1983, Title 42, U.S. Code. See, also, *Wheeler v. City of Pleasant Grove* (Former C.A. 5, 1987), 833 F.2d 267, 270 n. 3. In any event, we do not consider *Wheeler* to be controlling in the case before us.

[2] *Moore* might be interpreted as acknowledging, in certain circumstances where a temporary regulatory invasion of less than all of an owner's property rights amounts to an unconstitutional taking under the weighing-of-interests analysis of *Agins,* that such a taking may be compensable even though all use was not deprived under the *First English* test. The court in *Moore,* however, found there to be no taking under the *Agins* analysis and therefore did not reach that conclusion.