CLAY COUNTY, Missouri, By and Through the COUNTY COMMISSION OF CLAY, Missouri, Appellant,

v.

HARLEY AND SUSIE BOGUE, INC., A Missouri Corporation, Respondent.

No. WD 54427.

Missouri Court of Appeals, Western District.

March 9, 1999.

Kevin A. Graham, Liberty, for appellant.

Randall Dean Crawford, Kansas City, for respondent.

Before HOWARD, P.J.,
BRECKENRIDGE and SPINDEN, JJ.

BRECKENRIDGE, Judge.

Clay County, Missouri, by and through the County Commission of Clay County, Missouri, appeals from the trial court's order entering judgment in favor of Harley and Susie Bogue, Inc. On appeal, Clay County contends that the trial court erred by holding that it had effected a taking of the Bogues' property because the Bogues had failed to exhaust their administrative remedies before filing their taking claim. Clay County also contends that the trial court erred in its entry of judgment because the Bogues failed to present sufficient evidence to establish that a temporary taking occurred or that they were damaged. Because the trial court's order is not final with regard to the taking issue, the appeal is dismissed.

This case involves a zoning dispute between Clay County and Harley and Susie Bogue, Inc. In 1941, Harley and Susie Bogue purchased farmland located in Clay County. Since that time, the Bogue family has continuously farmed the land and raised hogs for commercial purposes. Over the years, the Bogues' hog and grain operations have expanded. Initially, the Bogues conducted the hog operation entirely on land. In 1971, to increase efficiency and profitability, the Bogues partially moved the operation into a farrowing house. The farrowing house was and is used for birthing and weaning the piglets. The piglets are then moved outside.

In 1974, the Bogues incorporated their farming operation for estate planning purposes.[1]

In the mid–1990's, the Bogues contemplated further expansion of their hog operation. The Bogues wished to increase the population of eighty-five breeding sows and one thousand five-hundred finished hogs to a minimum of three hundred breeding sows and five thousand finished hogs annually. The Bogues consulted experts at the University of Missouri Agricultural Department, who recommended moving the operation entirely indoors to comply with profitability demands and laws pertaining to water and soil conservation. To accomplish these goals, the Bogues planned to construct additional buildings. Upon completion, the entire hog population would be contained in one of four separate buildings from the time of birth to sale at the market.

After making this decision, the Bogues' son met with Stuart Borders, the Director of the Clay County Planning and Zoning Department, to discuss the proposed expansion and obtain a building permit. During the course of the discussions, Mr. Borders questioned whether the proposed expansion should be classified as a "feedlot." If classified as a "feedlot," the expansion would require a conditional use permit to conform to Clay County zoning ordinances. Because Clay County's zoning ordinances lacked a definition of "feedlot," Mr. Borders consulted three outside sources and determined that the proposed expansion was a "feedlot" and thus required a conditional use permit. Mr. Borders informed the Bogues of his decision by a letter dated February 8, 1996.

Shortly thereafter, the Bogues filed an application with the Clay County Planning and Zoning Commission seeking the conditional use permit. In accordance with zoning regulations, the Commission held two public hearings on the application. In a letter dated April 10, 1996, however, the Bogues' counsel notified Clay County that the Bogues were withdrawing their application for the conditional use permit. The Bogues' counsel informed the County that "[i]t has always been

applicant's position that a Conditional Use Permit is not required for the expansion of the Bogue family farm," and that under § 64.620, RSMo 1994,[2] farming is exempted from zoning laws. According to counsel for the Bogues, Mr. Borders' classification of the farming operation as a "feedlot" was not supported by the zoning regulations because the term "feedlot" was not defined in the regulations. The Bogues' counsel went on to state in the letter that Clay County's attempt to require a conditional use permit, or any type of permit, prior to expansion of the Bogues' farming operation was a denial of the Bogues' substantive due process rights, and he notified Clay County that the Bogues intended to commence construction of the expansion of its farming operation by April 18, 1996.

After receiving the Bogues' letter, the County filed a petition in the Clay County Circuit Court. In its first count, Clay County requested that the trial court declare that the proposed expansion was a "feedlot" which required a conditional use permit prior to construction. In its second count, Clay County asked the trial court to enjoin the Bogues from beginning construction on the proposed expansion without prior issuance of a conditional use permit. Thereafter, the Bogues filed a counterclaim. In their first count, the Bogues requested a judgment from the court declaring that (1) the imposition of the County's zoning regulations resulted in a taking and damaging of their property in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 26 of the Missouri Constitution; (2) the County's zoning regulations as applied to the Bogues are invalid because they are contrary to § 64.620; (3) the proposed expansion is not a "feedlot"; and (4) the Bogues' proposed farming operation is exempt under § 64.620 and not subject to the County's zoning regulations. The Bogues sought an injunction against Clay County from prohibiting construction of the proposed operation and a

---

1. This court will continue to refer to the corporation, Harley and Susie Bogue, Inc., as "the Bogues."

2. All statutory references are to the Revised Statutes of Missouri 1994.

damage award for the temporary taking of their property. In their second count, the Bogues sought a judgment from the court declaring that Clay County's classification of their proposed farming operation as a "feedlot" was "facially unreasonable, arbitrary, capricious, unconstitutional" and constituted a denial of its substantive due process rights, and an injunction enjoining Clay County from taking any action to prohibit the Bogues from constructing and operating their proposed farming operation. In their third count, the Bogues sought an injunction and damages for violation of their civil rights under 42 U.S.C. § 1983.

The parties submitted trial briefs. After hearing arguments on the briefs, the trial court entered its judgment on April 16, 1997. In its judgment, the trial court concluded that the buildings in which the Bogues proposed to conduct their hog operation were not "feedlots," but were farm buildings or structures within the meaning of § 64.620, and were thus exempt from the Clay County zoning regulations. The court also held that the Clay County zoning regulations regarding feedlots were unconstitutionally vague, ambiguous, and unenforceable, and, if meant to apply to farm buildings, were invalid at the time of their adoption. Furthermore, the court concluded that the regulations pertaining to feedlots were invalid as applied to the Bogues. The court declared that the Bogues' proposed expansion was not a "feedlot" and was exempt from the County's zoning regulations pursuant to § 64.620. In addition, the trial court enjoined Clay County from enforcing its zoning regulations pertaining to feedlots against the Bogues and requiring the Bogues to obtain a use permit to construct their proposed hog farm expansion. Finally, the trial court determined that the Bogues had suffered a temporary taking of their property in violation of Article I, § 26 of the Missouri Constitution as a result of the lawsuit filed against them by Clay County. The trial court's judgment did not address whether the Bogues had suffered a taking under the United States Constitution or whether the Bogues' civil rights were violated under 42 U.S.C. § 1983. With respect to the taking claim, the trial court determined only liability, leaving the issue of damages to

be resolved at a later date. Pursuant to Rule 74.01(b), the trial court certified the judgment as final for purposes of appeal. Clay County then filed this appeal.

In its points on appeal, Clay County contends that the Bogues failed to exhaust their administrative remedies before filing their temporary taking claim, and that there was not sufficient evidence to support the trial court's judgment that a compensable taking occurred. On its failure to exhaust administrative remedies claim, the County argues that the Bogues were precluded from bringing a taking claim because they withdrew their application for a conditional use permit prior to a final decision by the Clay County Planning and Zoning Commission on the application.

In their lawsuit against the County, the Bogues asserted that the County's regulations classifying their operation as a feedlot and requiring them to obtain a conditional use permit prior to constructing their hog farming expansion were invalid because they were contrary to § 64.620. Section 64.620 provides that the power of second and third class counties to impose zoning regulations "shall not apply to the erection, maintenance, repair, alteration or extension of farm buildings or farm structures used for such purposes...." Section 64.620.2. In its judgment, the trial court concluded that the buildings in which the Bogues proposed to conduct their hog farming operation were farm buildings or structures within the meaning of § 64.620, and thus were exempt from zoning regulations. Furthermore, the trial court found that the County's regulations concerning feedlots, if meant to apply to farm buildings, were invalid at the time the regulations were adopted.

The issues raised by the County in its first point were recently addressed by the Missouri Supreme Court in the case of *Premium Standard Farms v. Lincoln Tp.*, 946 S.W.2d 234 (Mo. banc 1997). In *Premium Standard*, a hog-farming corporation challenged a township's ability to regulate the corporation's finishing buildings and sewage lagoons. *Id.* at 238. The corporation contended that the finishing buildings and sewage lagoons were

"farm buildings" or "farm structures" pursuant to § 65.677, and were thus exempt from the township's zoning power. *Id.* at 238–39. Section 65.677, like § 64.620, provides that the powers granted by the township zoning statutes "shall not be exercised so as to impose regulations or to require permits ... with respect to the erection, maintenance, repair, alteration or extension of farm buildings or farm structures." The Supreme Court agreed with the corporation, and held as a matter of law "that the livestock sewage lagoons and the livestock finishing buildings at issue here [were] 'farm structures' within the meaning of section 65.677" and that the township's attempt to impose its regulations on those structures was not permissible. *Id.* at 240.

The Supreme Court also addressed the township's claim that the corporation failed to exhaust its administrative remedies because it did not appeal to the township's board of zoning adjustment for a variance permit. *Id.* at 237. The Court cited *State ex rel. Kramer v. Schwartz*, 336 Mo. 932, 82 S.W.2d 63, 69 (Mo.1935), for the proposition that a party challenging a government entity's authority to enact regulations pursuant to the statutes granting it the power to zone need not exhaust its administrative remedies. *Id.* The Court found that the sole issue in the case was whether the township had the authority to impose its regulations on the corporation's hog confinement facilities and sewage lagoons, and that this issue was "not at all dependent upon further development of the record through administrative procedures." *Id.* Because the issue was a legal issue, exhaustion of administrative remedies was not required. *Id.* at 238. The precedent established by *Premium Standard* would appear to govern the County's claim that the Bogues were required to their exhaust administrative remedies.

Clay County further argues that the Bogues failed to present sufficient evidence that a taking occurred. To establish a taking under Article 1, § 26 of the Missouri Constitution, a party must show that there was "an invasion or an appropriation of some valuable property right which the landowner has to the legal and proper use of his property, which invasion or appropriation must directly and specially affect the landowner to his injury." *Hamer v. State Highway Commission*, 304 S.W.2d 869, 871 (Mo.1957). The trial court found that the County effected a temporary taking of the Bogues' property by filing its lawsuit seeking a declaration that the Bogues' hog farming operation was a feedlot and subject to the County's zoning regulations requiring a conditional use permit, and an injunction enjoining the Bogues from constructing their proposed hog farm expansion. The trial court also found, however, that the County's regulations regarding feedlots, if meant to apply to farm buildings, were invalid at the time of adoption and were invalid as applied to the Bogues' property.

While the trial court focused on the fact that the County filed a lawsuit seeking declaratory and injunctive relief, the significant events were, instead, Clay County's adoption of an invalid regulation and its application of that regulation to the Bogues by requiring them to obtain a conditional use permit prior to the expansion of their hog farming operation. The imposition of an invalid regulation can, under certain circumstances, constitute a regulatory taking.

A regulatory taking occurs when a regulation enacted under the police power of the government goes too far. *Harris v. Missouri Dept. of Conservation*, 755 S.W.2d 726, 730 (Mo.App.1988). When a court finds that a regulation has gone too far and constitutes a taking, it is essentially finding "that the public at large, rather than a single owner, must bear the burden of an exercise of state power in the public interest." *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980).

There are no "set formulas" for determining when a regulation goes too far. *Harris*, 755 S.W.2d at 730. Generally, courts make that determination on a case-by-case basis. *Id.* The United States Supreme Court has recognized only two situations where a property owner is entitled to compensation for a regulatory taking without a "case specific inquiry." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798 (1992).

These two situations are (1) when a regulation causes an actual physical invasion of property; and (2) when a regulation denies "all economically beneficial or productive use of land." *Id.*

If the government's regulatory action does not fall into either of these two *per se* taking categories, courts are to undertake a factual inquiry into the specific circumstances of the case to determine whether a taking occurred. *Id.* at 1019, 112 S.Ct. at 2895 n. 8; *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). Missouri considers the same factors the Supreme Court has considered in making a determination of whether a taking has occurred under Article 1, § 26 of the Missouri Constitution. These factors are "(1) the economic impact of the regulation; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the government action." *Schnuck Markets, Inc. v. City of Bridgeton*, 895 S.W.2d 163, 168 (Mo.App.1995) (citing *Penn Central*, 438 U.S. at 124, 98 S.Ct. at 2659). Missouri has also adopted the United States Supreme Court's standard that a compensable taking occurs when the regulation does not "substantially advance a legitimate state interest." *Harris*, 755 S.W.2d at 731 (citing *Nollan v. California Coastal Com'n*, 483 U.S. 825, 834, 107 S.Ct. 3141, 3147, 97 L.Ed.2d 677 (1987)).

In Missouri, these standards have been applied in cases where the regulatory taking which did not deny the landowner all use of the property, i.e. the partial regulatory taking, was permanent, *see, e.g., Longview of St. Joseph v. St. Joseph*, 918 S.W.2d 364, 371–72 (Mo.App.1996) and *Schnuck Markets*, 895 S.W.2d at 167–68, or in cases in which the permanency of the partial regulatory taking was not addressed, *see, e.g., Harris*, 755 S.W.2d at 727. Missouri has not squarely addressed whether a cause of action for a temporary partial regulatory taking exists and if so, what standards apply. The United States Supreme Court has allowed a cause of action for a temporary regulatory taking. *First English Evan. Luth. Ch. v. Los Angeles Cty.*, 482 U.S. 304, 321–22, 107 S.Ct.

2378, 2389, 96 L.Ed.2d 250 (1987). In *First English*, the Supreme Court stated that " 'temporary' takings, which, as here, deny a landowner all use of his property, are not different in kind from permanent takings, for which the Constitution clearly requires compensation." *Id.* at 318, 107 S.Ct. at 2388. The Court went on to hold that a temporary deprivation of all use of property due to the imposition of a regulation later invalidated can constitute a taking requiring compensation. *Id.* at 321, 107 S.Ct. at 2389.

Some jurisdictions have interpreted the Supreme Court's holding in *First English* as limiting a cause of action for a temporary taking *only* to situations where a landowner has been denied all use of its property, and not when a landowner has been denied partial use of its property. *See Miller & Son Paving v. Plumstead Tp.*, 552 Pa. 652, 717 A.2d 483, 485–86 (1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 903, 142 L.Ed.2d 902, 67 U.S.L.W. 3468 (1999) (holding that an invalid zoning ordinance did not effect a *per se* taking of property, and that the property owner failed to establish a regulatory taking under Pennsylvania's test because the property owner was not denied all beneficial use of the property); *St. Lucas Ass'n v. City of Chicago*, 212 Ill.App.3d 817, 156 Ill.Dec. 885, 571 N.E.2d 865, 875–76 (1991) (finding that a zoning ordinance which was unconstitutional as applied to property did not effect a taking of the property because it caused only a decrease in value and not "a denial of all economically viable use of the property"); *The Shopco Group v. Springdale*, 66 Ohio App.3d 702, 586 N.E.2d 145, 148–49 (1990) (holding that compensation for a temporary taking was permissible only where there had been a deprivation of all uses of the property, and the balancing of public and Private interests was relevant only in cases involving permanent taking claims).

Other jurisdictions have allowed a cause of action for a temporary regulatory taking which did not deny all use of the property. *See Poirier v. Grand Blanc Tp.*, 167 Mich. App. 770, 423 N.W.2d 351, 352–53 (1988) (finding that a landowner who was not denied all use of his property was entitled to compensation for a taking, even though the tak-

ing was temporary); *Cannone v. Noey,* 867 P.2d 797, 800–801 n. 3 (Alaska 1994) (finding that the application of the permanent taking factors, which include consideration of the character of the government's action, the economic impact of the action, the interference with investment-based expectations, and the legitimacy of the interest advanced by the regulation, was a "useful beginning" to the analysis of a temporary partial regulatory taking claim).

A temporary partial regulatory taking claim case which applied the same standards used in Missouri for analyzing permanent partial regulatory taking claims and has a similar fact scenario to the present case is *Steinbergh v. City of Cambridge,* 413 Mass. 736, 604 N.E.2d 1269 (1992). In *Steinbergh,* the City of Cambridge had an ordinance provision which restricted the right of certain condominium owners to sell individual condominium units. *Id.* at 1271. After the provision was found invalid, the condominium owners filed a taking claim against the city, contending that the application of the invalid ordinance provision constituted a taking in violation of the Massachusetts and United States Constitutions. *Id.* at 1271–72.

In analyzing the temporary regulatory taking claim, the Supreme Judicial Court of Massachusetts first determined that the claim did not fall into either one of the *per se* taking categories. *Id.* at 1273. The court then noted that, while the United States Supreme Court has held that the standards applicable to permanent regulatory taking claims are applicable to temporary regulatory taking claims where a landowner was denied all use of his property, the Court "has not explicitly stated, however, what principles apply when a temporary regulatory taking does not deny all economically beneficial use of property." *Id.* at 1274 n. 6. The court assumed that the principles applicable to a permanent taking claim apply to a temporary taking claim "in the same manner." *Id.* Thus, the court considered "the regulation's economic impact on the property as a whole and the extent to which the regulation ha[d] interfered with [the] property owner's distinct investment-based expectations." *Id.* at 1274 (footnote omitted). In doing so, the court found that the regulation did not interfere with the owners' investment-based expectations. *Id.* The court also found that even though the ordinance was invalid because the city had no authority to adopt such a provision, the ordinance substantially advanced the legitimate state interest of rent control. *Id.* at 1276.

The resolution of this case requires a determination of whether a cause of action exists in Missouri for a temporary regulatory taking which does not deny a landowner all beneficial use of the property, and if so, whether the standards set out in *Schnuck Markets* and *Harris* apply to such actions. This determination, as well as whether the Bogues were required to exhaust their administrative remedies as asserted by the County in its point one, is left to the trial court at this time, however, because the lack of a final judgment on the Bogues' taking claim precludes us from deciding these issues.

Although the parties do not address it, this court has a duty to determine its jurisdiction of appeals *sua sponte. Gibson v. Brewer,* 952 S.W.2d 239, 244 (Mo. banc 1997). " 'A prerequisite to appellate review is that there be a final judgment.' " *Id.* (quoting *Boley v. Knowles,* 905 S.W.2d 86, 88 (Mo. banc 1995)). To constitute an appealable judgment, a judgment must dispose of all issues in a case and leave nothing for future determination. *Id.* If the trial court's judgment is not final, the appellate court is without jurisdiction to consider the appeal, and the appeal must be dismissed. *Id.*

In cases involving multiple claims, however, a court can, pursuant to Rule 74.01(b), enter judgment on fewer than all of the claims and certify the judgment for appeal upon finding that there is "no just reason for delay." *Id.* Even when the trial court certifies its judgment as final for purposes of appeal, as the court did in this case, the trial court's determination is not conclusive. *Id.* "It is the content, substance, and effect of the order that determines finality and appealability." *Id.* This court must still decide if the partial judgment actually qualifies as a final judgment. *Morris v. Patterson,* 549 S.W.2d 613, 614 (Mo.App.1977).

While Rule 74.01(b) permits the trial court to decide fewer than all claims, it does not dispense with the finality requirement for the claims adjudged. "Although a circuit court may designate its judgment final as to particular claims, this designation is effective only when the order disposes of a distinct 'judicial unit.'" *Gibson,* 952 S.W.2d at 244. This judicial unit must be a final judgment on the claim, not a ruling on fewer than all issues which does not dispose of the claim. *Id.* The rationale for requiring a "judicial unit for appeal" is that "[b]y withholding ruling on part of a claim, questions are left open which, upon full adjudication of the claim by the trial court, may make the order appealed from moot or which, when fully decided, may even change the identity of aggrieved parties." *Committee for Educ. Equality v. State,* 878 S.W.2d 446, 451 (Mo. banc 1994).

In this case, although the trial court certified its judgment as final, this court is confronted with one claim which has yet to be fully resolved. The judgment on the Bogues' taking claim failed to resolve the damages issue. In fact, the parties presented no evidence regarding damages. When the trial court asked the parties if they were going to present evidence, the Bogues' attorney stated the following:

> [T]here won't be any arguments through witnesses today. It will just be argument of these briefs. We've agreed to bifurcate this into two issues. We'll have this hearing today to determine, basically, the legal issues. Depending on the outcome of that, we may or may not return back to this court at a later date for a hearing on damages when the evidence would be presented.

The hearing on damages never occurred. To have a taking under Article 1, § 26 of the Missouri Constitution, there must be "an invasion or an appropriation of some valuable property right which the landowner has to the legal and proper use of his property, which invasion or appropriation must directly and specially affect the landowner to his injury." *Hamer,* 304 S.W.2d at 871. By not adjudicating an essential element, that is the ascertainment of the extent of the Bo-

gues' injury, i.e. damages, the trial court decided fewer than all legal issues as to the taking claim. Because the judicial unit presented to this court does not consist of a final judgment, this court is without jurisdiction to hear Clay County's appeal.

In so ruling, this court has not overlooked the holding in *International Minerals v. Avon Products,* 817 S.W.2d 903 (Mo. banc 1991). In that case, Avon sold the stock of a subsidiary to International Minerals. *Id.* at 904. Avon chose to indemnify International Minerals against the subsidiary's liabilities, one of which was a pending patent infringement suit. *Id.* The judgment rendered in the patent infringement suit was adverse to the subsidiary and International Minerals sought to enforce the indemnity agreement. *Id.* In its petition, International Minerals requested a declaratory judgment of Avon's liability, and damages resulting from breach of the indemnity agreement. *Id.* The trial court determined that Avon was liable under the indemnity agreement, but withheld ruling on damages for breach of the agreement. *Id.* The trial judge certified the ruling on liability under the indemnity agreement as final for purposes of appeal pursuant to Rule 74.01(b), and Avon appealed. *Id.*

The Missouri Supreme Court upheld the trial court's finding that the judgment was final for purposes of appeal, and, in its opinion, stated the following:

> [D]etermination of liability is a matter that can be the subject of an independent judgment. The trial court's judgment, however labeled, is essentially a declaratory judgment determining liability. This is an appropriate judgment capable of standing alone.

*Id.* at 906. Unlike the declaratory judgment determining liability in *International Minerals,* the judgment in this case determining liability on a taking claim arising under Article 1, § 26 of the Missouri Constitution cannot stand alone absent adjudication of the element of damages. Liability cannot be the subject of an independent judgment because, according to the *Hamer* standard, damages are a necessary component of a taking claim.

Furthermore, the holding in *International Minerals* was called into question by the Missouri Supreme Court's ruling in *Committee for Educational Equality*. 878 S.W.2d 446. In *Committee for Educational Equality*, the plaintiffs brought multiple claims, requesting a declaratory judgment, an injunction, and other equitable relief. *Id.* at 452. In its order, the trial court entered a declaratory judgment with respect to all of the claims, but retained jurisdiction over those claims to enforce the judgment and, if necessary, grant injunctive relief. *Id.* The Court in *Committee for Educational Equality* distinguished *International Minerals* on the basis that in *International Minerals*, the assessment of damages "was dependent upon different operative facts, some of which were undetermined when the petition was filed, and upon a different legal theory from the existence and terms of the indemnity agreement." *Id.* The Court in *Committee for Educational Equality* went on to state that:

> *International Minerals*, while reaching the correct result, went too far in some respects.... To the extent that *International Minerals* might be read to remove the requirement that the judgment dispose of one claim as to one party, it should not be followed. A judgment is not final merely because it could, in a hypothetical case, be final if it does not, in the case under consideration, dispose of one claim for relief as to any party.

*Id.* at 452–53.

The present case may be similarly distinguished. Determining liability and damages for a taking involves one legal theory, and, in this case, little difference in operative fact. Liability and damages for a taking are so closely connected that neither could be the subject of a separate judgment. As a result, the judgment in this case does not fully dispose of the Bogues' taking claim. The decision in *Committee for Educational Equality* has been reaffirmed by the Missouri Supreme Court in *Gibson*, 952 S.W.2d at 244.

On appeal, this court is presented with the one claim which has yet to be fully resolved. Even though the trial court certified its judgment as final for purposes of appeal pursuant to Rule 74.01(b), it failed to fully adjudicate the Bogues' taking claim. Because the trial court's judgment regarding the Bogues' taking claim is not final regardless of the Rule 74.01(b) certification, this court is without jurisdiction to hear Clay County's appeal. *Id.* The appeal is dismissed and the cause is remanded for further proceedings.

All concur.