The **BOARD OF DIRECTORS OF RICHLAND TOWNSHIP, Barton County, Missouri, by and through Bruce J. Gardner, Chairman, Mike Ball, Trustee, Sandra Harris, Clerk, and Mark Bruffett, Member, Plaintiffs–Appellants,**

v.

**KENOMA, LLC, A Missouri Limited Liability Company, Defendant–Respondent.**

No. SD 29080.

Missouri Court of Appeals, Southern District, Division Two.

March 19, 2009.

Motion for Rehearing or Transfer Denied April 10, 2009.

Application for Transfer Denied June 30, 2009.

---

John E. Price Springfield, MO, for Appellant.

Robert J. Brundage, Alicia Embley Turner, Jefferson City, MO, for Respondent.

Before LYNCH, C.J., BURRELL, P.J., and RAHMEYER, J.

PER CURIAM.

The Board of Directors of Richland Township, Barton Co., Missouri ("the Township Board"), brought suit against Kenoma, LLC ("Kenoma"), to enjoin a proposed hog feeding business on the grounds that it would violate the provisions of the Zoning Handbook and the amended Handbook adopted by the Township Board. The court granted Kenoma's motion for summary judgment and the Township Board appeals.

### Issues in the Case

Kenoma owns a tract of land consisting of approximately thirty acres in Richland Township. In October 2006, Kenoma began preparations for the construction of a 4,800 head sow farrow-to-wean operation on its property. In March 2007, Kenoma decided to construct a hog building that would hold only 2,400 head of sows in a farrow-to-wean operation with a single-cell lagoon to store effluent from the hog buildings.

In December 2006, the Township Board agreed to place on the April 3, 2007 ballot a referendum to authorize zoning in Richland Township. On April 3, 2007, an election was held, and a majority of registered voters of Richland Township who cast a vote that day voted in favor of "zoning or planning." Bruce Gardner, Mike Ball, Mark Bruffett, and Sandra Harris were elected to the four positions on the Township Board.

On April 11, 2007, the Township Board held a meeting and appointed Dennis Wilson, Bruce Gardner, Mike Ball, and Greg Harris to the Township Zoning Commission, also known as the Richland Township Zoning Board ("the Zoning Board"). The Township Board scheduled the first meeting of the Zoning Board for April 30, 2007.

Mr. Gardner could not produce a copy of any notice that may have been posted announcing the date and time of the April 11, 2007 Township Board meeting and proposed agenda items. Although Mr. Gardner could not locate a notice of the meeting, he testified at a deposition that he knows he posted a notice at his home. He testified that the notice would have been the same as the Township Board notice dated May 4, 2007 because he uses the

same form of notice for every meeting. Typical Township Board notices stated that the "purpose of the meeting is to discuss any business that might come before the board and pay bills."

On April 30, 2007, the Zoning Board met and adopted the Richland Township Planning and Zoning Handbook. The Handbook prohibits "livestock feedlots," which are defined as "confinement facilities where . . . swine . . . are held in a concentration of 800 confined or unconfined hogs of all ages and weights per 160 acres" or in any other concentration which "as a result of location, aggregation, and/or combination of facilities have demonstrable impacts on land use, water quality, air emissions and/or environmental factors which can be demonstrated." The Handbook requires livestock sewage lagoon systems and livestock feedlots to maintain a minimum setback distance of 5,280 feet from an adjacent residence or dwelling.

The Zoning Board met on May 21, 2007, and amended the Handbook; however, the Township Board conceded that the amendment procedures set forth in the April 30, 2007 Handbook were not followed.

On May 22, 2007, a contractor began bulldozing dirt on Kenoma's property, digging a lagoon basin, and preparing a dirt pad for the foundation for the hog barns. On July 9, 2007, the Township Board filed a Petition for Temporary Restraining Order and Injunctive Relief to enjoin Kenoma from constructing and operating a concentrated swine feeding operation in Richland Township. The court denied the request for a temporary restraining order.

On August 7, 2007, a contractor completed construction of a lagoon basin and began pouring the concrete foundation for the hog buildings. When completed, Kenoma's operations will include an isolation building for incoming gilts (breeding stock), a gestation barn, and a farrowing (birthing) barn. As of August 28, 2007, the isolation barn's foundation had been poured, the slatted floors had been set, the walls had been erected, and the trusses had been put in place. The gestation barn's concrete foundation had been poured and the slatted floors had been set. The farrowing barn's floor was in the process of being poured. On August 29, 2007, Kenoma filed a Motion for Summary Judgment as to the Township Board's request for a preliminary and permanent injunction.

On September 10, 2007, the Handbook was amended a second time and signed by all four members of the Township Board. The September 10, 2007 Handbook prohibits any "concentrated livestock operations" or "feedlots" where swine are raised in a concentration of 800 head of confined or unconfined hogs per 160 acres. The Handbook requires any "concentrated livestock operation" to maintain a minimum setback distance of 5,280 feet from an adjacent residence or dwelling and to be screened from public view from beyond the property of the premises where the concentrated livestock operation is conducted. "Concentrated livestock operation" is defined as an "agricultural operation where . . . swine . . . are held, bred, or raised in a concentration of at least 600 confined or unconfined hogs of all ages and weights per 160 acres."

On October 1, 2007, the Township Board filed an Amended Petition for Injunctive Relief, seeking a preliminary and permanent injunction on the grounds that the construction and operation of Kenoma's swine feeding operation violates the April 30, 2007 Handbook, the May 21, 2007 amended Handbook, and the September 10, 2007 amended Handbook. The Township Board also filed a Cross–Motion for Summary Judgment. On December 5,

2007, the trial court granted Kenoma's Motion for Summary Judgment.

The trial court ruled in four alternative holdings: (1) that Kenoma's livestock operations are exempt from regulation by Richland Township under section 65.677;[1] (2) that the Township Board's attempt to enact the zoning handbooks were void and unenforceable for the failure to strictly comply with section 65.662; (3) that the amended Handbook violates the original zoning Handbook's amendment procedures and thus is invalid, and (4) that the Township Board failed to comply with the Missouri Sunshine Law, thus voiding the zoning handbooks. The Township Board challenges each of these findings. While there is merit to the Township Board's last three points,[2] the court's first holding, which concluded that the Supreme Court of Missouri's decision in *Premium Standard Farms, Inc. v. Lincoln Township of Putnam County*, 946 S.W.2d 234 (Mo. banc 1997), controls the substantive question regarding the validity of the attempted zoning regulations, moots the remaining points regarding proper notice and alleged Sunshine Law violations.

Section 65.677 provides in pertinent part:

> For the purpose of promoting health, safety, morals, comfort or the general welfare of the unincorporated portion of the township, to conserve and protect property and building values, to secure the most economical use of the land, and to facilitate the adequate provision of public improvements all in accordance with a comprehensive plan, the township board of any township to which the provisions of sections 65.650 to 65.700 are applicable shall have power after approval by vote of the people to regulate and restrict, by order of record, in the unincorporated portions of the township, the height, number of stories, and size of buildings, the percentage of lots that may be occupied, the size of yards, courts and other open spaces, the density of population, the location and use of buildings, structures and land for trade, industry, residence or other purposes, including areas for agriculture, forestry, and recreation. The provisions of sections 65.650 to 65.700 shall not be exercised so as to impose regulations or to require permits with respect to land, used or to be used for the raising of crops, orchards or forestry or with respect to the erection, maintenance, repair, alteration or extension of farm buildings or farm structures. The powers granted by sections 65.650 to 65.700 shall not be construed:
>
> . . . .
>
> (2) So as to deprive any court of the power of determining the reasonableness of regulations and power in any action brought in any court affecting the provisions of sections 65.650 to 65.700 or the rules and regulations adopted thereunder;

Section 65.677.

The pertinent language, relied on by Kenoma and the trial court, is:

> The provisions of sections 65.650 to 65.700 shall not be exercised so as to impose regulations or to require permits with respect to land, used or to be used for the raising of crops, orchards or forestry or with respect to the erection, maintenance, repair, alteration or extension of farm buildings or farm structures.

*Id.* The trial court found as a matter of law that, pursuant to section 65.677, the Town-

1. All references to statutes are to RSMo 2000, unless otherwise specified.

2. Specifically, the trial court ruled as a matter of law on credibility issues such as the posting of proper notice.

ship Board's zoning regulations, as applied to Kenoma's concentrated livestock operation, were invalid and unenforceable because the regulations attempt to regulate farm buildings or farm structures. It noted:

The discussion and analysis of section 65.677, RSMo by the Missouri Supreme Court in *Premium Standard Farms, Inc. v. Lincoln Township of Putnam County*, 946 S.W.2d 234 (Mo. banc 1997) controls the decision of this case. In *Premium Standard Farms*, Lincoln Township of Putnam County promulgated planning and zoning regulations that permitted livestock sewage lagoons systems and livestock feedlots ("livestock feedlot" defined in pertinent part as 1,000 hogs per acre). *Id.* at 235–36. The regulations required minimum setbacks of 5,280 feet from adjacent residences or dwellings for lagoon systems. *Id.* at 236. The regulations also required minimum setbacks of 1,400 feet from adjacent residences or dwellings for livestock feedlots. *Id.* Lincoln Township's zoning restrictions on "livestock feedlots" regulated densities of hogs whether the hogs were confined to a farm building or free range. *Id.* Premium Standard Farms (PSF) constructed hog barns and lagoons that were not in compliance with these requirements because the hog densities within the barns exceeded the densities in the Lincoln Township regulations and the lagoons did not meet the setback distances. *Id.*

The Court in *Premium Standard Farms* explained that the plain language of section 65.677, RSMo states that "zoning power shall not be exercised so as to impose regulations ... with respect to the erection, maintenance, repair, alteration or extension of farm buildings or structures." *Id.* at 238, 240. "Farming" was found to include the raising of livestock and "structure" was found to mean

any construction. *Id.* at 238. Thus, section 65.677, RSMo prohibits townships from regulating farm structures and construction.

The Court further explained that the clause in section 65.677, RSMo stating that township boards have the power to regulate the use of land for trade, industry, residence or other purposes, including areas for agriculture, "generally grants the township power to restrict certain 'areas for agricultural, forestry, and recreation' uses," but "it does not authorize the regulation of agricultural uses." *Id.* at 239–40. Moreover, the "farm buildings or farm structures" exemption in section 65.677, RSMo "is a clear and direct limitation upon more general powers otherwise granted." *Id.* at 240. Therefore, the exemption for farm structures limits a township's ability to regulate agricultural uses of land within the township.

It further found that *Clay County ex rel. County Com'n of Clay County v. Harley and Susie Bogue, Inc.*, 988 S.W.2d 102 (Mo.App. W.D.1999), reached a consistent result when it upheld a county's regulation requiring a feedlot to obtain a conditional use permit prior to constructing new hog buildings pursuant to section 64.620. Specifically:

In *Clay County ex rel. County Com'n of Clay County v. Harley and Susie Bogue, Inc.*, 988 S.W.2d 102 (Mo.App. W.D.1999) the Missouri Court of Appeals, Western District, applied *Premium Standard Farms* to reach a decision consistent with the holding of *Premium Standard Farms*. In *Clay County*, the defendants asserted that the county's regulations classifying their operation as a feedlot and requiring them to obtain a conditional use permit prior to constructing new hog buildings were invalid because they were contrary to section 64.620. *Id.* at 105. This section, like section 65.677, RSMo, provides that the

power of second and third class counties to impose zoning regulations "shall not apply to the erection, maintenance, repair, alteration or extension of farm buildings or farm structures used for such purposes. . . ." *Id.*

The trial court concluded that the buildings in which the defendant proposed to conduct its hog farming operation were farm buildings or structures within the meaning of section 64.620, RSMo and therefore exempt from zoning regulations. *Id.* Furthermore, the trial court found that the county's regulations concerning feedlots, if meant to apply to farm buildings, were invalid at the time the regulations were adopted. *Id.* On appeal, the Court of Appeals indicated that this issue had been resolved by *Premium Standard Farms* and impliedly agreed with the trial court's decision on this issue. Thus, *Clay County* established that if a zoning regulation, *as applied,* violates section 65.677, RSMo, it is invalid and cannot be enforced.

The trial court concluded that the original Zoning Handbook adopted by the Township Board requires livestock sewage lagoon systems to maintain a minimum setback distance of 5,280 feet (one mile) from an adjacent residence or dwelling and generally prohibits "livestock feedlots," which are defined as confinement facilities where swine are held in a concentration of 800 confined or unconfined hogs and, therefore, by its plain language explicitly regulates farm structures within the meaning of section 65.677. Citing to *Premium Standard Farms,* the trial court also found that livestock sewage lagoons are also farm structures within the meaning of section 65.677.

The Township Board claims the trial court erred in concluding that Kenoma's livestock operations are exempt from regulation by the Township Board under section 65.677 for the reason that the zoning handbooks only regulated the use of land and size, density and distance from adjacent residences of animal feeding operations and did not impose any regulation upon farm buildings or structures. A reading of section 65.677 would seem to support that interpretation. As the Township Board notes, under the trial court's interpretation, if a township has no power to regulate the agricultural use of land as long as a farm building is part of the operation, then what possible purpose is the clause "the township board . . . shall have power . . . to regulate and restrict, by order of record . . . the . . . use of . . . land for trade, industry, residence or other purposes, including areas for agriculture?" In other words, a liberal construction of the words erection, maintenance, repair, alteration or extension of farm buildings or farm structures necessarily swallows the entire grant of statutory authority at least as to the regulation of the use of agricultural land. While it is also certainly arguable that the legislature did not intend for the exemption to apply to feedlots since it uses the specific language creating an exemption for the "raising of crops, orchards or forestry," we are constitutionally bound to follow the most recent controlling decision of the Supreme Court of Missouri. *Savannah Place, Ltd. v. Heidelberg,* 164 S.W.3d 64, 68 (Mo.App. S.D.2005).

As the trial court found, in a remarkably similar argument, our supreme court found that Lincoln Township lacked statutory authority to promulgate regulations which required minimum setbacks of 5,280 feet from adjacent residences or dwellings for lagoon systems, cash or surety bonds to ensure proper closure and post closure care for the sewage lagoons, and minimum setbacks of 1,400 feet from adjacent residents or dwellings for livestock feedlots. *Premium Standard Farms,* 946 S.W.2d at 240. The livestock sewage lagoons and the livestock finishing buildings were "farm

---

---

structures" within the meaning of section 65.677. *Id.* The setback provisions contained in the regulation promulgated by the Township Board attempted to require livestock confinement systems or feedlots to maintain a setback of one mile from adjacent residences or dwellings. It further prohibited feedlots with more than 800 hundred confined or unconfined hogs per 150 acres. As applied in this case, the zoning regulations attempted to regulate the farm structures housing the confined hogs.[3] The Township Board lacked statutory authority to regulate Kenoma's hog operation under section 65.677. Thus, the trial court did not err in denying the injunction and request for relief by the Township Board. The judgment is affirmed.

---

**3.** Apparently, the Township Board could regulate a hog farm operation that built no lagoons and no confinement buildings but it had no mechanism to regulate any of the buildings or lagoons.